[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 230 
Petitioners, Jesse C. Bishop and Wayne L. Kerns, seek a Writ of Mandamus from this Court to compel Judge William A. Thompson, Jr., Circuit Court for the Tenth Judicial Circuit, to vacate his Order of February 3, 1978, and permit discovery concerning certain documents in the possession of Earl C. Morgan, District Attorney for the Tenth Judicial Circuit. A Writ of Mandamus, directing the Circuit Court to vacate the Protective Order of February 3, 1978, and to conduct a hearing on the Motion of the District Attorney for a Protective Order consistent with the principles stated in this opinion, is due to issue.
Petitioners are the holders of record of 7,352 shares of common stock of Assured Investors Life Insurance Company. On August 17, 1977, Assured Investors Life Insurance Co. v.National Union Associates, Inc., Civ. Action No. CV-77 504-029 WAT, was filed in the Circuit Court seeking adjudication of certain claims against officers, directors and stockholders of Assured. Originally, the action was brought on behalf of Assured by a Special Committee designated by its Board of Directors to investigate and recover on claims made by Bishop. Eventually, the parties were realigned and Bishop and Kerns proceeded as Plaintiffs, both individually and derivatively as stockholders of Assured.
On January 30, 1978, Petitioners filed a notice of taking deposition and subpoena duces tecum for deposition upon oral examination addressed to Morgan. The subpoena sought, interalia:
 "10. Transcripts of any and all proceedings occurring during any meeting of any kind or nature whatsoever between yourself and any member of your office and Ronald J. Creel [a named Defendant in the Civil Action mentioned above]."
On February 3, 1978, Morgan filed a Motion for Protective Order pursuant to Rule 26 (c), ARCP, seeking to deny discovery of the Creel documents. As grounds therefor, Morgan alleged that the documents were the work product of an ongoing criminal investigation collateral to the civil action. At the hearing, he further alleged that such documents were protected under an executive privilege. No supporting affidavit was filed, but the Court, relying upon Morgan's oath as an officer of the Court and his oath as District Attorney, accepted these contentions and ordered that the deposition and subpoena duces tecum be disallowed. *Page 231 
It appears that the District Attorney's office conducted investigations of Assured and its officers and directors for possible violations of the insurance laws of this State. In so doing, a statement made by Creel was obtained and signed by him. It is a transcript of this statement which Petitioners seek.
In December, 1977, the Jefferson County Grand Jury returned indictments against several of the civil co-defendants, but not against Creel. Morgan asserts that this investigation is ongoing and that, therefore, the requested documents are privileged.
Preliminarily, we note that, by their Answers to this Petition, both Morgan and Judge Thompson contend that the documents sought were not subpoenaed properly pursuant to Rule 45 (d), ARCP. It appears, however, that this contention was not raised below and, thus, we may not review the matter here. Colev. Cole Tomato Sales, Inc., 293 Ala. 731, 310 So.2d 210 (1975). See also Miller v. Sun Chemical Corp., 12 F.R.D. 181 (D.N.J. 1952); McDuffie v. Hooper, 294 Ala. 293, 315 So.2d 573 (1975); and Fountain v. Vredenburgh Saw Mill Co., 279 Ala. 68,181 So.2d 508 (1965).
Our Rules of Civil Procedure are based upon, and are strikingly similar to, the Federal Rules of Civil Procedure. Because these two sets of Rules are virtually verbatim, a presumption arises that cases construing the Federal Rules are authority for construction of the Alabama Rules. Ex parte Rice,265 Ala. 454, 92 So.2d 16 (1957). See also Ex parte HuguleyWater System, 282 Ala. 633, 213 So.2d 799 (1968); and Smith v.Flynn, 275 Ala. 392, 155 So.2d 497 (1963).
Rule 26, ARCP, provides:
 (b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
 (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
. . . . .
 (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . . (Emphasis added.)
Thus, to be entitled to a protective order, a movant must either show good cause why the objected-to deposition or production of documents would be unduly burdensome or expensive, oppressive, embarrassing or annoying, or that the subject matter sought to be discovered is privileged. The record before us is totally without "good cause shown." Therefore, because the material sought is undisputably otherwise within the scope authorized above, it is discoverable unless it is "privileged." See, generally, Glick v. McKesson Robbins, Inc., 10 F.R.D. 477 (W.D.Mo. 1950); and Allen v.Jones, 259 Ala. 98, 65 So.2d 217 (1953).
It is well settled that the Rules on deposition and discovery are to be broadly and liberally construed. Cole, supra. Rule 26 (c), supra, recognizes, however, that the right to discovery is not unlimited, and the trial court has broad powers to control the use of the process to prevent its abuse by any party. SeeCampbell v. Eastland, 307 F.2d 478 (5th Cir. 1962); and DeLongCorp. v. Lucas, 138 F. Supp. 805 (S.D.N.Y. 1956). The Rule does not allow an arbitrary limit on discovery; instead, it vests the trial court with judicial discretion in the discovery process. The question on review, then, becomes one of whether, under all the circumstances, the court has abused this discretion. Campbell v. Regal Typewriter *Page 232 Co., 341 So.2d 120 (Ala. 1976).[1] An appellate court may not decide whether it would, in the first instance, have permitted the prayed for discovery. Furthermore, it is unusual to find abuse of discretion in these matters. Swanner v. United States,406 F.2d 716 (5th Cir. 1969); Tiedman v. American PigmantCorp., 253 F.2d 803 (4th Cir. 1958); Ex parte Alabama PowerCo., 280 Ala. 586, 196 So.2d 702 (1967); and 35A C.J.S. FederalCivil Procedure §§ 532, 592.
Against this broad policy of liberal discovery, Morgan contends that the document sought to be discovered is privileged. "Privileged," as used in Rule 26 (b)(1), ARCP, means "`privileges' as that term is understood in the law of evidence." United States v. Reynolds, 345 U.S. 1, 6,73 S.Ct. 528, 531, 97 L.Ed. 727 (1953). As stated, Morgan bases this argument upon two premises: (1) That the material sought is the "work product" of the District Attorney's office, gathered in preparation of a criminal action; and (2) That the material sought is privileged under a broad claim of executive or "Crown" privilege.
The "work product" argument is inapplicable because:
 "The written statement of a witness, whether prepared by him and later delivered to the attorney, or drafted by the attorney and adopted by the witness, is not properly considered the `work product' of an attorney. It records the mental impressions and observations of the witness himself and not those of the attorney." Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55, 58 (N.D. Ohio 1953), citing, Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
Here, the mere fact that the District Attorney's office obtained this statement does not render it their work product. The transcription and recordation of the statement was incidental to the statement itself, which was not the product of counsel. Therefore, we are left with the sole question of whether the statement is nondiscoverable under the concept of executive privilege.
"Executive privilege" is a privilege claimed by a governmental body when it fears that discovery of its confidential information will seriously impair its ability to function. Wood v. Breier, 54 F.R.D. 7 (E.D. Wis. 1972). Historically, it has been reserved for military and diplomatic state secrets and is founded upon the "unfortunately necessary policy of fettering justice to promote national health." TimkenRoller Bearing Co. v. United States, 38 F.R.D. 57, 63 (N.D. Ohio 1964).
In the instant action, the privilege is claimed so as to prevent possible hampering of an ongoing criminal action. Morgan, however, asserted this privilege, not by affidavit or under oath, but upon bare allegations at the motion hearing. Though the document was offered to the Court for in camera
examination, no such review took place.
As stated in Timken, at 63:
 "It can no longer be claimed that a naked assertion of privilege by the executive is sufficient to assure non-disclosure. `Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.' (Reynolds, 345 U.S., at 9-10, 73 S.Ct. 528.) Therefore the responsibility of evaluating the claim of privilege devolves upon the Court. This can no longer be questioned."
See also Gaison v. Scott, 59 F.R.D. 347 (D.Hawaii 1973); andConway v. Rimmer, [1968] Law Rpts. (Appeal cases) 910, overruling, Duncan v. Cammell Laird Co., 1 All E.R. 587 (1942). *Page 233 
In deciding to uphold or overrule claims of executive privilege, the role of the trial court is limited to a determination of three fundamental questions: (1) Whether the claim falls within one of the categories of privileges recognized in the law of evidence; (2) Whether the claim has been properly invoked; and (3) Whether the circumstances of the case under consideration are appropriate for the exercise of the claim. Jabara v. Kelley, 75 F.R.D. 475 (E.D.Mich. 1977). See also Reynolds, supra. Underlying these deceptively simple questions is the more important task of determining the proper balance that must be struck between competing fundamental interests. On the one hand, there is the undeniable interest of the executive branch of government in maintaining confidentiality over certain types of information necessary for the performance of its constitutional duties. On the other hand, there is the unquestionable interest of the litigant in seeking information for the just resolution of the legal dispute. United States ex rel. Jackson v. Petrilli,63 F.R.D. 152 (N.D.Ill. 1974); Frankenhauser v. Rizzo, 59 F.R.D. 339
(E.D.Pa. 1973); and Wood, supra. Finally, there is also the perplexing separation of powers question that is lurking in the background of every claim of executive privilege.
In light of the balance of interest which must be resolved in such cases, it is essential to emphasize that claims of executive privilege, like other evidentiary privileges, must be narrowly construed so as to permit the broadest possible discovery otherwise allowed under the Rules. 35 C.J.S. FederalCivil Procedure § 709. The governmental interest in favor of maintaining confidentiality under the cloak of privilege must be tempered by the historical function of the courts to provide compulsory process for the production of material needed for a just determination of the legal dispute. To insure that justice is done, the trial court should, therefore, initially weigh the balance of interest in favor of liberal discovery of all facts needed for a fair determination of the dispute. Jabara, supra;Equal Employment Opportunity Comm. v. Los Alamos Constructors,Inc., 382 F. Supp. 1373 (D.N.M. 1974); Wood, supra; Glick,supra; and 35A C.J.S. Federal Civil Procedure § 738.
The executive privilege applicable to information held by the government during an ongoing criminal proceeding is a qualified one. Timken, supra. But see Capitol Vending Co. v. Baker,36 F.R.D. 45 (D.D.C. 1964). The trial Judge in this case did not view the document in camera. While ordinarily this is not required, certainly it is permissible so long as such in camera
inspection itself would not violate important confidential affairs. See Reynolds, supra. Yaffe v. Powers, 454 F.2d 1362
(1st Cir. 1972); and Kinoy v. Mitchell, 67 F.R.D. 1 (S.D.N Y 1975). In the case before us, the trial Court abused its discretion by accepting the bare assertions of the District Attorney that the material sought was privileged. Also, because no military or state secrets are involved, we hold that the trial Court must examine the document to determine whether the whole entity, or any part thereof, is properly discoverable. It is only through such an examination that the proper balancing determination can be made. During the pendency of such examination, however, the Court must be careful not to disclose the very thing the privilege, if any, is designed to protect.
If, upon the notification of this decision, the Circuit Court does not vacate the Protective Order of February 3, 1978, and proceed to conduct a hearing on the Motion of the District Attorney for a Protective Order consistent with the principles stated in this opinion, a Writ to effectuate such action will issue upon the request of Petitioners.
WRIT GRANTED CONDITIONALLY.
BLOODWORTH, FAULKNER, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX, J., dissent.
[1] As stated, this action concerns a Writ of Mandamus. While mandamus does not normally lie to control the exercise of discretion, it is nevertheless appropriate to compel an official both to exercise his discretion and to exercise it under a proper interpretation of applicable law. Shepherd v.Superior Court of Alameda County, 17 Cal.3d 107, 130 Cal.Rptr. 257,550 P.2d 161 (1976). Mandamus is the proper means of review to determine whether the trial judge abused his discretion in limiting the right to discovery. See Ex parteAlabama Power Co., 280 Ala. 586, 196 So.2d 702 (1967).