518 So.2d 65 (1987)
George Markham MARCH III
v.
Ivie Clayton STRINGER.
85-1240.
Supreme Court of Alabama.
October 2, 1987.
Rehearing Denied December 4, 1987.
*66 John D. Richardson and Weyman W. McCranie, Jr., of Brown, Hudgens, Richardson, Mobile, for appellant.
Joseph C. McCorquodale III of McCorquodale & McCorquodale, Jackson, for appellee.
ALMON, Justice.
This is an appeal by the defendant, George Markham March III, from the denial of his Rule 60(b), A.R.Civ.P., motion for relief from a default judgment.
On February 2, 1983, an accident involving the parties to this action occurred in the Bel Air Mall at Mobile. According to the plaintiff, Ivie Clayton Stringer, he was struck and severely injured by an automobile being driven by March. According to March, Stringer walked into the side of his automobile.
Thereafter, Stringer employed Joseph C. McCorquodale III, of Jackson, Alabama, to proceed with a claim on his behalf in connection with the accident. Meanwhile, March telephoned his insurance agent within a couple of hours after the accident and reported it.
Stringer's attorney obtained March's address from the accident report and, on February 21, 1983, wrote to him at 1201-B Primeter [sic] Drive, Mobile, Alabama:
"Dear Mr. March:
"This is to advise that we have been retained by Ivie Clayton Stringer to represent him concerning the accident of February 2, 1983, wherein he was struck by your automobile. We would like to resolve this matter without the necessity of having to go to Court.
"Please contact my office in order that we may discuss this matter more fully."
March took this letter to his insurance agent or adjuster (March used both terms at the hearing). Ms. Lequita Robinson, a claims representative for the insurance company, acknowledged to Stringer's attorney on February 28, 1983, that the insurer had received this letter.
Later, the insurer referred the file to Ray McGraw, an independent adjuster, who, on July 25, 1983, wrote to Stringer's attorney that he was handling the file, and concluded:
"We would appreciate your current evaluation along with any information concerning medical treatment and bills incurred by your client. We also look forward to discussing this matter with you since this appears to be most [sic] questionable case of liability on the part of our insured."
On September 6, 1983, Stringer's attorney wrote to McGraw as follows:
"Mr. Ray L. McGraw, Claims Specialist
"McGraw Claims Service, Inc.
"P.O. Box 81472
"Mobile, Alabama 36689
"Re: Our Client: Ivie Clayton Stringer
Your Insured: Yalana March
Date of Loss: February 2, 1983
"Dear Mr. McGraw:
"In connection with the above, enclosed are the following:
"1. Copy of bills from Mobile Infirmary.
"2. Copy of statement from McVay Clinic.
"3. Copy of bill from Bone and Joint Clinic, P.A.
"The total specials in this case amount to approximately $19,827.68. Due to the questionable liability, it is my recommendation that Mr. Stringer accept in settlement of the case the sum of $19,827.68.
"Please let me have your feeling in this regard as soon as possible."
Stringer's attorney wrote again on September 28, 1983:
"Mr. Ray L. McGraw, Claims Specialist
"McGraw Claims Service, Inc.
"P.O. Box 81472
"Mobile, Alabama 36689
*67 "Re: Our Client: Ivie Clayton Stringer Your Insured: Yalana March Date of Loss: February 2, 1983
"Dear Mr. McGraw:
"Please reply to my letter of September 6, 1983, in connection with the above case. If we do not hear from you within a week, then we will have no alternative but to proceed with a lawsuit in this matter."
The attorney wrote another letter on October 7, 1983:
"Mr. Ray L. McGraw, Claims Specialist
"McGraw Claims Service, Inc.
"P.O. Box 81472
"Mobile, Alabama 36689
"Re: Our Client: Ivie Clayton Stringer
Your Insured: Yalana March
Date of Loss: February 2, 1983
"Dear Mr. McGraw:
"I have still had no reply to my letter of September 6, 1983, concerning the above matter. Please let me hear from you in this matter within one week."
On December 15, 1983, he sent another letter:
"Mr. Ray L. McGraw, Claims Specialist
"McGraw Claims Service, Inc.
"P.O. Box 81472
"Mobile, Alabama 36689
"Re: Ivie Clayton Stringer
"Dear Mr. McGraw:
"Please respond to our demand for settlement in the above case. Enclosed are copies of prior correspondence."
Stringer's attorney testified that during this correspondence he had no telephone conversations with McGraw. According to McGraw, however, he had telephone conversations with Stringer's attorney, during which he discussed the claim and his company's position, at least until December 27, 1983.
On January 24, 1984, Stringer filed an action for damages in Clarke County against March. The complaint contained two counts, one based on negligence and one on wanton conduct. The summons filed therewith stated that the defendant "may be served at: 1201-B Primiter Drive, Mobile, Alabama 36605." This summons was returned "Not Found," as acknowledged by a deputy sheriff's signature. Then service of process was attempted by certified mail on March 26, 1984, at the same address. This certified mail process was returned on April 20, 1984, "Unclaimed."
On June 19, 1984, Stringer's attorney moved by affidavit in the trial court for service by publication. The pertinent part of that affidavit follows:
"My name is Joseph C. McCorquodale, III, and I am attorney for the plaintiff in the above styled cause. The only address available to the plaintiff for the defendant, George Markham March, III, is that address listed on the accident report which is 1201-B Primiter Drive, Mobile, Alabama 36605. Service of process on the defendant has been attempted at the aforesaid address and in the court file there appears a notation from the process server stating `returned not found.' Plaintiff does not know any other address for the defendant. Plaintiff can only assume that the defendant is avoiding service and that his present location or residence is unknown except for the aforesaid residence where service has already been attempted. Therefore, plaintiff requests that this court allow service by publication. Since the last known address of the defendant was Mobile County, plaintiff requests that the publication be a newspaper published in Mobile County as well as Clarke County."
On that day, the circuit clerk of Clarke County issued an order that publication be made once a week for four consecutive weeks in The South Alabamian, a newspaper published in Clarke County, and in The Mobile Press Register, a newspaper published in Mobile County, "requiring the said George Markham March, III, to plead or answer to the complaint in this cause by the 19th day of August, 1984, or in default thereof, thirty days thereafter a default judgment may be taken against said defendant." Subsequently, a legal notice, ordered by the circuit clerk of Clarke County, was published on June 28, July 5, July 12, *68 and July 19 in both of the newspapers referred to above.
Apparently there arose thereafter some question concerning the sufficiency of the previous affidavit for service by publication, for on December 5, 1984, Stringer filed a motion for service by publication, from which we quote in pertinent part:
"The plaintiff moves the Court to order service by publication and as grounds therefor shows as follows:
"1. Personal service on defendant, GEORGE MARKHAM MARCH, III, is not practicable because plaintiff has no knowledge as to the residence of said defendant or where he can be found, although the plaintiff has made diligent efforts to learn the whereabouts of said defendant.
"2. A summons was issued in this case directed to said defendant, which was returned March 5, 1984, by the Sheriff, endorsed, `Not Found.'
"WHEREFORE, plaintiff moves this Court to order service by publication in a newspaper and for a time to be designated by this Court, pursuant to Rule 4.3, Alabama Rules of Civil Procedure."
The attached affidavit stated, in pertinent part:
"Joseph C. McCorquodale, III, being duly sworn, on oath deposes and says:
"1. That he is the attorney for the plaintiff in this cause.
"2. That the residence of the defendant, GEORGE MARKHAM MARCH, III, is unknown.
"3. A summons issued by the Circuit Clerk and delivered to the Sheriff was returned by him on March 5, 1984, endorsed: `Not Found.'
"4. Affiant has made diligent efforts to ascertain the residence or whereabouts of said defendant and has not been able to discover his residence or whereabouts.
"5. That the defendant is over 19 years of age and that he is not an incompetent person."
We note that the motion and the affidavits do not specify any of the efforts made by Stringer's attorney to locate March.
On December 5, 1984, the Clarke Circuit Court entered the following order:
"On motion of the plaintiff for an order requiring publication in the above-styled cause, and it appearing to the Court that the defendant, GEORGE MARKHAM MARCH, III, cannot be found and his residence is unknown and that personal service on said defendant is not practicable, it is
"ORDERED, ADJUDGED and DECREED that the defendant, GEORGE MARKHAM MARCH, III, appear or plead to the complaint herein by the 3rd day of February, 1985, and in default thereof that the Court will proceed to the hearing and adjudication of this suit as if he had been served with process.
"It is further ORDERED, ADJUDGED and DECREED THAT THIS ORDER BE PUBLISHED IN The South Alabamian once a week for four consecutive weeks, posted at the door to the Clarke County Courthouse, and sent to the said defendant by registered mail at his last known address."
Publication of this order ensued as directed. Service by certified mail was also attempted on December 6, 1984, at 1201-B Primiter Drive, Mobile, but was returned "not claimed" on January 2, 1985.
On March 18, 1985, Stringer's motion to withdraw his jury demand was granted by the Clarke Circuit Court. On that same date, the circuit court ordered the circuit clerk to enter a default against March. The clerk did so on the same day. Following a hearing at which testimony and other evidence on Stringer's injuries were taken, the court awarded damages to Stringer in the amount of $71,797.68.
On August 26, 1985, March moved for relief from the default judgment under Rule 60(b)(6), A.R.Civ.P., stating:
"Defendant, immediately after the accident that is the basis of this action, notified his insurance carrier of the accident. Defendant was not contacted by Plaintiff or Plaintiff's attorney at any time subsequent to the accident. Defendant has never received personal service *69 of the complaint in the above action. Defendant never received notice of suit through publication. Defendant had no notice that any suit had been filed against him until August 8, 1985, [at which time] he was notified of a default judgment entered against him.
"Defendant files his affidavit and the affidavit of Ray McGraw, insurance adjuster for American Liberty Insurance Company, in support of this Motion.
"Defendant denies the allegations set forth in the complaint and alleges that he has a meritorious defense to those allegations."
The affidavit of Ray McGraw contained the following pertinent statement:
"My office contacted Mr. Joseph McCorquodale, III, attorney for Ivie Clayton Stringer, concerning the possible claim of Mr. Stringer. Correspondence continued between my office and Mr. McCorquodale until December 15, 1983. At no time did Mr. McCorquodale advise my office that a suit was filed on behalf of Mr. Stringer and against Mr. March.
"My office continued to monitor this file until February 28, 1985. At that time, my office checked the District and Circuit Courts of Mobile County and found no suits filed. With this knowledge and the fact that it had now been more than one year since the accident and any subsequent suit would be barred by the Statute of Limitations, my office closed its file.
"At no time have we had any contact with our insured, Mr. March, or the Plaintiff's attorney concerning the filing of suit.
"The first notice received of this action was in the form of a copy of the default judgment entered on March 30, 1985, in the Circuit Court of Clarke County, Alabama. The copy of the Order was accompanied by a letter from Plaintiff's attorney, dated August 2, 1985, advising my office of the judgment rendered in the above case.
"At no time was my office notified of this suit prior to the receipt of the letter of August 2, 1985."
March's affidavit also averred exculpatory facts:
"I was involved in an automobile accident on February 2, 1983, when a Mr. Ivie Clayton Stringer walked into the side of my automobile at Bel Air Mall in Mobile, Mobile County, Alabama. I immediately contacted my insurance company, American Liberty Insurance Company. I did not participate in the claim correspondence and negotiation between my insurance company and the claimant. I was never contacted by the claimant or his attorney. I have never been personally served with a summons and complaint concerning the lawsuit filed by Ivie Clayton Stringer against me. I never saw any publication in the Mobile Press Register or any other newspaper concerning this lawsuit. I never received any notice of a Complaint filed by Ivie Clayton Stringer against me concerning the accident of February 2, 1983.
"I received notice of the suit and judgment against me when my insurance company contacted me and advised me that they had received a copy of the judgment. I was contacted by the insurance company on August 6, 1985.
"I was in no way at fault in the accident.
"There is one witness that will testify that Ivie Clayton Stringer walked into the side of my vehicle.
"I intend to provide a meritorious defense to this complaint when I am given the opportunity to be heard in Court."
March subsequently amended his motion for relief, asserting that the venue was improper under Rule 82, A.R.Civ.P., and that the judgment was void.
Both parties submitted briefs in connection with the motion for relief.
On October 3, 1985, the circuit court heard evidence on the motion and, after consideration, denied the motion for relief on June 25, 1986. This appeal followed.
Rule 60(b), A.R.Civ.P., sets out the grounds upon which a party may seek relief from a "final judgment, order, or proceeding." By virtue of his averments in *70 his motion and its amendment, March relies upon ground (4) ("the judgment is void") and ground (6) ("any other reason justifying relief from operation of the judgment").
March maintains that the judgment against him is void because he was never properly served with process because Stringer's attorney failed to exercise the "reasonable diligence" required under Rule 4.3(d)(1), A.R.Civ.P., to ascertain the residence of March. That rule states:
"Before service by publication can be made in an action where the identity or residence of a defendant is unknown, or when a defendant has been absent from his residence for more than thirty days since the filing of the complaint or where the defendant avoids service, an affidavit of a party or his counsel must be filed with the court averring that service of summons or other process cannot be made because either the residence is unknown to the affiant and cannot with reasonable diligence be ascertained, or, the identity of the defendant is unknown, or, the resident defendant has been absent for more than thirty days since the filing of the complaint, or, the defendant avoids service, averring facts showing such avoidance."
According to March, reasonable diligence was lacking because Stringer's attorney made no attempt to obtain his address after service sent to the address found on the accident report was returned "not found" or "unclaimed." March emphasizes that Stringer's attorney never attempted to telephone his father, whose telephone number was listed in the telephone directory, or to telephone March himself. March introduced copies of pages from two years' Mobile telephone directories showing listings for "G.M. March" and "Dr. George M. March." Apparently one of these listings was for the father of defendant March; reasonable diligence would suggest that they be tried before service by publication be employed. Stringer's attorney testified that he did not look in the Mobile telephone directory after service was returned "Not found." According to March, he moved to Dauphin Island in May 1983 and obtained a telephone with a number listed for his Dauphin Island address.
March also points out that Stringer's attorney had knowledge that McGraw, the adjuster, was acting on behalf of March, and yet Stringer's attorney failed to notify the adjuster of any unsuccessful attempts to obtain service and failed to notify McGraw that a suit had been filed. According to March, he notified his insurance agent of his new address and it could have been obtained through the agent. There was some indication that McGraw did not have March's new address. However, when Stringer's attorney notified McGraw of the default judgment (immediately after the four-month period for motions under 60(b)(1) through (3) had expired, we note), March was promptly notified and the instant motion for relief was soon filed.
Stringer makes the point that McGraw did not respond (at least in writing) to his attorney's attempts to negotiate the claim. McGraw was under no obligation to respond to these letters, however, so, even accepting the attorney's version of the facts, i.e., that he and McGraw did not communicate by telephone, such a failure to communicate was no basis upon which the attorney could refrain from making the effort of locating March through McGraw. The attorney testified that he did in fact make no such effort because of McGraw's failure to correspond:
"I did not call Mr. McGraw because Mr. McGraw had seen fit not to respond to any of my efforts to contact him and I didn't feel like I owed Mr. McGraw any further effort to contact him. I had written Mr. McGraw a number of times and he had simply refused to correspond with me on this matter."
He did not owe such an effort to McGraw, but he did owe it to March in order to obtain jurisdiction over him in Stringer's lawsuit. The letter that had been sent to March at the Primiter Drive address had resulted in McGraw's acting on behalf of March in the matter. When the address later proved ineffective for service upon March, diligent effort required that Stringer's *71 attorney inquire of McGraw as to March's whereabouts before attempting service by publication.
In Marshall v. Mid-State Homes, Inc., 468 So.2d 131 (Ala.1985), this Court held that the setting aside of a default judgment was proper where there had been service by publication, setting forth efforts the plaintiff should have taken when service by certified mail was returned unclaimed, efforts which were perhaps more burdensome than those which could have been pursued in this case. Also, in Whitfield v. Sanders, 366 So.2d 258 (Ala.1978), this Court held that a default judgment based on service by publication was void since the defendant easily could have been served by certified mail. The Court of Civil Appeals reached a similar result in Sams v. Equitable Life Assur. Society, 402 So.2d 999 (Ala.Civ.App.1981). Hutchins v. Shepard, 370 So.2d 275 (Ala.1979), and Brooks v. Brooks, 494 So.2d 645 (Ala.Civ.App.1986), are distinguishable on their facts, in that in those cases it affirmatively appeared that diligent efforts to locate the defendant were fruitless or would have been futile. See also Illinois Central Gulf R.R. v. Horton, 514 So.2d 1283 (Ala.1987).
This Court stated in Smith v. Clark, 468 So.2d 138, 141 (Ala.1985):
"When the grant or denial [of a Rule 60(b)(4) motion] turns on the validity of the judgment, discretion has no place for operation. If the judgment is void, it is to be set aside; if it is valid, it must stand. Wonder v. Southbound Records, Inc., 364 So.2d 1173 (Ala.1978). A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process. Ibid."

For the foregoing reasons, the trial court erred in denying March's 60(b)(4) motion for relief from the default judgment.
We note also that Rule 82, A.R. Civ.P., requires that personal actions against permanent residents of the state be brought "either in the county where the act or omission ... occurred, or in the county of the permanent residence of the defendant." The accident occurred in Mobile County and March lived in Mobile County, but Stringer filed suit in Clarke County.
Although it is not necessary that the defendant show a meritorious defense to succeed on a Rule 60(b)(4) motion, see Ex parte Wilson Lumber Co., 410 So.2d 407 (Ala.1982), we note that March testified that he was driving at 5 m.p.h. when Stringer stepped into the side of his car, under circumstances in which he (March) could not avoid the accident. This testimony was corroborated by a witness, Carl Patrick Olsen:
"Q. "Mr. Olsen, you said you were standing at your car unlocking the door.
"A. I hadn't reached the door yet. I had rounded the front of the hood.
"Q. Okay. And what did you see?
"A. I saw this elderly man, old man, fixing to walk into the side of a moving vehicle.
"Q. Okay. What typedid you notice the vehicle prior to that?
"A. No, I couldn't even tell you what color it was.
"Q. Do you know whether that accident that you're talking about that the driver of the carhave you subsequently learned that that was Mr. March that was the driver of that car?
"A. Well, yeah.
"Q. And you subsequently learned that the man walking was Mr. Stringer.
"A. Right.
"Q. And what did you see occur as you said you saw him walking into the car? Please tell the Court exactly what you saw occur.
"A. Well, when I looked the car was in motion and he was in motion and he wasn't looking where he was going. He was kind of glancing back and I knew can I say that I said that to my wife or not?
"THE COURT: No, sir.
"A. No.
"MR. FLOYD:
"Q. Just tell us what you saw.
"A. Okay. I saw the man fixing to step into the side of the car.

*72 "Q. Okay.
"A. And he did, just almost a matter of seconds.
"Q. Was he looking straight ahead the man walking?
"A. No, sir, he was kind of looking like that (indicating).
"Q. And what happened immediately after he hit the car?
"A. Well, kind of stunned him like and he fell.
"Q. Okay. And could you tell how fast the car was going?
"A. No.
"Q. Was he going fast, too fast for that area?
"A. No, he wasn't going fast."
These matters indicating that the action was filed in the wrong county and that March presented a meritorious defense are not necessary to our holding that the trial court erred in denying the 60(b)(4) motion; we set them forth simply to indicate that March's 60(b) motion was amply supported.
The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
BEATTY, J., dissents.
BEATTY, Justice (dissenting).
An examination of the two affidavits executed by plaintiff's attorney, quoted in the majority opinion, fulfill the requirements of Rule 4.3(d)(1), A.R.Civ.P. The evidence shows that the February 21, 1983, letter of plaintiff's attorney was received by defendant. He did not reply to this letter, and he subsequently moved from his 1201-B Primiter Drive address in Mobile without either telling his neighbors or leaving a forwarding address with the post office. He did not have a telephone number listed in the Mobile directory. The defendant himself, however, testified that his telephone number had never been unlisted. According to McGraw, the insurance adjuster, the defendant did not give the adjuster a forwarding address, and, in fact, the adjuster never had any notice of a change in defendant's address. The adjuster himself had difficulty locating March, as shown by his file, part of which we quote:
"At no time have we had any contact by the insured or the attorney concerning any suits filed.
"Upon obtaining this court order, I have attempted to locate the insured without success.
"His wife did work at the Hickory House Restaurant and she is no longer employed there. No one I spoke with yesterday could remember anything about her whereabouts.
"I found that the insured no longer resides at 1201-B Perimeter [throughout the record the street is usually referred to as "Primeter"] Drive, Mobile, AL. This is a housing project. I checked with neighbor, Annie Porter at 1200-B and she indicated they had moved over a year ago. She did not know of any way of contacting them.
"We also checked with neighbor, William Ship at 1203 and he had no knowledge of their identity or whereabouts.
"We found a neighbor at 1200-A, Franklin Baughn who recalled the insured living there and him being a commercial fisherman. He indicated he thought they had relocated to the Bayou La Batre area.
"I checked with the housing authority manager at Brookly Center and they had a forwarding address of P.O. Box 168, Dauphin Island, AL 36528. Their records indicate they moved out of the project in May, 1984.
"From the housing authority records I found the only next of kin listed was a J.W. Kislanko who is most probably Mrs. Marsh's [March's] ex-husband. I obtained a phone number 478-6469, however, I have been unable to make contact with him as of yet."
There is no evidence that would indicate any more success by the plaintiff's attorney had he made these or similar attempts to locate the defendant.
*73 The facts establish that service by certified mail was attempted on two occasions at the same address, an address at which they knew the defendant had received mail because of his adjuster's earlier reply to plaintiff's lawyer. On each of those occasions the certified mail was sent twice, and returned "not claimed." The record discloses that defendant was residing in Mobile County when the publication notice appeared in the Mobile Register. Service was also attempted by the Mobile County sheriff's office at the same address used in the certified mail and returned "not found." No reason was established, moreover, why or how plaintiff's attorney could, or should, have known the name of defendant's father so as to telephone him as to his son's whereabouts.
The record also discloses that plaintiff's lawyer wrote four letters to defendant's adjuster during September, October, and December 1983the December letter containing copies of the previous three letters. No written replies were received. In that connection, plaintiff's lawyer denied having any telephone conversations with defendant's adjuster concerning the subject matter of those letters. Contrary to that position, defendant's adjuster testified that he and plaintiff's lawyer discussed these by telephone:
"Q. Prior to September 6, I believe you testified that prior to September the 6th that you had a phone conversation with me.
"A. I have one noted there specifically by date on August the
"Q. 26.
"A. 26.
"Q. Okay, sir. And I think it's your testimony that in response to that, you received my September 6th letter; is that correct; in which you received the bills on Mr. Stringer.
"A. That we had been speaking of, yes, sir.
"Q. Yes, sir. Did you reply to my September 6th letter?
"A. Not in any written form, no sir.
"Q. Did you reply in any form?
"A. Yes sir, I did.
"Q. What form was that?
"A. Telephone.
"Q. It's your testimony here today under oath that you talked with me on the telephone subsequent to September 6th of 1983?
"A. Yes, sir.
"Q. If you did that, Mr. McGraw, do you have any idea why I would again write you on September 28th and say please reply to my letter of September 6 in connection with the above case. If we do not hear from you within a week we will have no alternative but to proceed with a lawsuit in this matter.
"A. I was somewhat baffled when I got this one because we had talked
"Q. It's your testimony that I wrote you that letter in spite of the fact that we had had a conversation?
"A. I don't know. I'm saying we had a telephone conversation between the times of those two.
"Q. Do you have a record of that?
"A. I can get it from my telephone.
"Q. You don't have it with you here today?
"A. No, sir, I don't because I was
"Q. Okay, sir. Now, you did not reply to my September 28th letter in writing, did you?
"A. No, sir, I didn't.
"Q. I wrote you again on October 7, marked as Defendant's Exhibit Number Eight, and that letter said I have still had no reply to my letter of September 6, 1983, concerning the above matter. Please let me hear from you on this matter within one week.
"Did you respond to that letter?
"A. Not in writing, but I believe my telephone records will show that we did talk within that week.
"Q. You called me again. Is that your testimony? And I still wrote you that letter?
"A. Yes, sir.
"Q. You have any idea why I would write you a letter like that if we had talked on the telephone?
"A. No, sir.

*74 "Q. Did it ever occur to you to document the phone conversations in writing to me?
"A. It's in my records.
"Q. You didn't document it in writing, did you?
"A. It's in my telephone records.
"Q. You did not write me a letter, did you?
"A. No, we talked.
"Q. You never corresponded with me, did you, other than the July 25th letter?
"A. That's the only letter, yes, sir, I believe that I wrote you.
"Q. The only letter that you ever wrote me?
"A. Yes, sir.
"Q. In spite of receiving my September 6th letter and September 28th letter?
"A. Yes, sir.
"Q. Then, you received the October 7th letter?
"A. Yes, sir.
"Q. I guess you wondered then what I was writing you that letter for; is that right?
"A. Yes, sir.
"Q. And you still didn't reply in writing?
"A. We did not.
"Q. Then, I wrote you again on December 15, 1983, marked as Defendant's Exhibit Nine.
"A. Uh-huh.
"Q. Did you receive that letter?
"A. Yes, sir.
"Q. Did you respond in writing to that letter?
"A. No, not in writing.
"Q. Did you respond in any way?
"A. Yes, sir.
"Q. How?
"A. By telephone.
"Q. Do you have a record of that with you here today?
"A. No, sir, not with me today."
This exchange raised conflicting inferences. If, as defendant argues, it was incumbent upon plaintiff's counsel to notify defendant's adjuster of the filing of the lawsuit, it was equally incumbent upon the adjuster, in view of the correspondence between them, to make a similar inquiry, since that correspondence specifically referred to the threat of a lawsuit. The absence of any inquiry from the adjuster would tend to support the claim of reasonable diligence on the part of plaintiff's lawyer.
As this Court stated in Smith v. Clark, 468 So.2d 138 (Ala.1985):
"Clause (6) of this rule [60(b) ] and the first five clauses of this rule are mutually exclusive, and relief cannot be obtained under (6) if it would have been available under one of the other five clauses. Assured Investors Life Ins. Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978); City of Birmingham v. City of Fairfield, 396 So.2d 692 (Ala.1981). Consequently, relief under Rule 60(b)(6) is available only under circumstances not arising under 60(b)(1)-(5); Rule 60(b)(6) is reserved for `extraordinary circumstances,' and is available only in cases of `extreme hardship or injustice,' City of Birmingham, supra, or when the case involves `aggravating circumstances,' Giles v. Giles, 404 So.2d 649 (Ala.1981). The decision to grant or to withhold Rule 60(b)(6) relief being discretionary, the trial court's decision will not be reversed except for an abuse of that discretion. Textron [, Inc.] v. Whitfield, 380 So.2d 259 (Ala.1979).
"On the other hand, a Rule 60(b)(4) motion has a different standard of review on appeal. When the grant or denial turns on the validity of the judgment, discretion has no place for operation. If the judgment is void, it is to be set aside; if it is valid, it must stand. Wonder v. Southbound Records, Inc., 364 So.2d 1173 (Ala.1978). A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process. Ibid."

Under the facts, we should not conclude that the trial court abused the discretion vested in it under subsection (6). The validity of the affidavits pursuant to Rule *75 4.3(d)(1) is unchallenged, and, indeed, comply with that rule. The efforts of plaintiff's attorney to communicate with defendant and his adjuster disclose a level of diligence reasonable at the very least, and thus do not place this case within the class of cases involving "extraordinary circumstances." Moreover, those very facts detailed above disclose a consistency with due process, in accord with the mandate of Wonder v. Southbound Records, Inc., 364 So.2d 1173 (Ala.1978). Defendant has not shown that the Clarke Circuit Court acted otherwise than within its power, for it clearly possessed jurisdiction of the subject matter and, under the requirements of Rule 4.3(d)(1), A.R.Civ.P., jurisdiction of the defendant. The decisions relied upon by the defendant for a contrary result, I respectfully note, are distinguishable. The case of Webb v. Galloway, 442 So.2d 53 (Ala.1983), accords with the decision I would reach on this point.
Moreover, we should not conclude that the trial court abused its discretion by rejecting the argument that it should set aside the default judgment on the basis that venue was proper only in Mobile County. The trial court's position is tenable.
It is true that Rule 82, A.R.Civ.P., rerquires that personal actions against permanent residents of the state may be brought "either in the county where the act or omission ... occurred, or in the county of the permanent residence of the defendant." Even so, improper venue is a defense under Rule 12(b), A.R.Civ.P., and may be waived. Ex parte Tanksley, 418 So.2d 94 (Ala. 1982). As was stated in Jordan v. Guaranty Pest Control, Inc., 292 Ala. 601, 606, 298 So.2d 244, 248 (1974): "[I]t seems clear that the appropriate method to attack improper venue is to appear and make timely motion, and on a failure to do so the improper venue is waived." In this case, the trial court could have found that the defendant not only did not appear, but gave the reasonable appearance of avoiding service, to the extent that a proper default judgment could be entered against him. The Rules of Civil Procedure must be construed so as to accommodate each other; it would be disconsonant to allow the proper entry of a default judgment upon a nonappearing party, only to later require the removal of that judgment because the defaulting party chose not to appear and plead. Cf., Ex parte Starr, 419 So.2d 222 (Ala.1982). Relief under Rule 60(b)(6) is not intended to relieve a party from the free, calculated, and deliberate choices he has made. Tichansky v. Tichansky, 54 Ala.App. 209, 307 So.2d 20 (1974), cert. denied, 293 Ala. 775, 307 So.2d 24 (1975).
Finally, the fact that the defendant may have possessed a meritorious defense does not mean that the trial court erred in refusing to set aside the default judgment.
The record contains testimony of both the plaintiff and the defendant. The plaintiff testified:
"Q. Were you injured as a result of being hit by that automobile?
"A. Yes, sir.
"Q. Would you tell the Court what happened on that occasion and how you were injured?
"A. Well, I started across the street and my daughterand granddaughter and great-granddaughter was ahead of me and they was kind of behind each other and then they went on ahead. I started across the street. The man was up the street a pretty good piece, almost a block, I reckon, and I started across and the next thing I knew, I was hit and laying on the ground. I did throw my hand out and tried to push myself away when he was right on me, but I didn't have much luck doing that and I don't suppose he run over me but he hit me and knocked me down.
"Q. How were you injured?
"A. Well, my hip was broke, shoulder was broke, elbow and arms was broke, my knee wasI was torn in my left knee and my ankle was messed up somewhat. I don't know. I don't remember along about that time, it was kind of hazy, but from what they tell me that whole left side was either fractured or broke.
". . .
"Q. Was it your opinion that the automobile was travelling too fast?
*76 "A. It had to be, I believe. Yeah, in my opinion it had to be travelling fast to come almost a block as quick as it did. When I looked upthey know I wouldn't walk in front of the automobile, if I had known it.
"Q. Did you look before you started crossing
"A. Yes, sir, I looked up that way and the other way, and started on across itmy daughter was a little bit behind them and I was a little bit behind her, from the parking lot, and I got there and looked and I started across and that's about all I canI never did black out, but everything is kind of hazy from then on for a good long while."
The defendant, on the other hand, testified that he was driving at 5 m.p.h. when the plaintiff stepped into the side of his car, under circumstances in which he could not avoid the accident. This testimony was corroborated by a witness, Carl Patrick Olsen:
"Q. "Mr. Olsen, you said you were standing at your car unlocking the door.
"A. I hadn't reached the door yet. I had rounded the front of the hood.
"Q. Okay. And what did you see?
"A. I saw this elderly man, old man, fixing to walk into the side of a moving vehicle.
"Q. Okay. What typedid you notice the vehicle prior to that?
"A. No, I couldn't even tell you what color it was.
"Q. Do you know whether that accident that you're talking about that the driver of the carhave you subsequently learned that that was Mr. March that was the driver of that car?
"A. Well, yeah.
"Q. And you subsequently learned that the man walking was Mr. Stringer.
"A. Right.
"Q. And what did you see occur as you said you saw him walking into the car? Please tell the Court exactly what you saw occur.
"A. Well, when I looked the car was in motion and he was in motion and he wasn't looking where he was going. He was kind of glancing back and I knew can I say that I said that to my wife or not?
"THE COURT: No, sir.
"A. No.
"MR. FLOYD:
"Q. Just tell us what you saw.
"A. Okay. I saw the man fixing to step into the side of the car.
"Q. Okay.
"A. And he did, just almost a matter of seconds.
"Q. Was he looking straight ahead the man walking?
"A. No, sir, he was kind of looking like that (indicating).
"Q. And what happened immediately after he hit the car?
"A. Well, kind of stunned him like and he fell.
"Q. Okay. And could you tell how fast the car was going?
"A. No.
"Q. Was he going fast, too fast for that area?
"A. No, he wasn't going fast."
This polemic evidence created an issue of fact, but the question remains whether it demonstrates an abuse of the trial court's wide discretion in determining not to grant relief under Rule 60(b)(6). Those disputed facts do not present an extraordinary or compelling circumstance requiring relief. Cf., Howell v. D.H. Holmes, Ltd., 420 So.2d 26 (Ala.1982). Nor is there anything in such a vein presented in the amount of damages awarded. A review of the record discloses ample proof supporting the damages award.