927 So.2d 805 (2005)
Ex parte ALABAMA DEPARTMENT OF YOUTH SERVICES.
(In re Amber Elizabeth Hoover et al.
v.
John Zeigler et al.)
1040649.
Supreme Court of Alabama.
October 21, 2005.
*806 H. Lewis Gillis, Frederic A. Bolling, and Michael E. Gurley of Thomas, Means, Gillis & Seay, P.C., Birmingham, for petitioner.
David H. Marsh, Thomas M. Powell, and Alan B. Lasseter of Marsh, Rickard & Bryan, P.C., Birmingham, for respondents.
NABERS, Chief Justice.
The Alabama Department of Youth Services ("DYS") petitions for a writ of mandamus directing the Jefferson Circuit Court to vacate its order of January 25, 2005, compelling production of documents created during DYS's investigation of alleged improprieties on its Chalkville campus. We grant the petition and issue the writ.

Facts
This petition arises from events relating to physical and sexual abuse that allegedly occurred in 2001 at the Chalkville campus. DYS first became aware of the allegations of misconduct at the Chalkville campus when a juvenile court judge in Calhoun County contacted Walter Wood, the executive director of DYS, on or about May 16, 2001. The affected detainees at Chalkville were all female minors, and the allegations made to the juvenile court judge, and conveyed through him to Wood, included allegations of physical abuse, sexual abuse, *807 and sexual exploitation. Upon learning of these allegations Wood directed his staff to conduct an investigation, including on-site interviews with staff and detainees at the Chalkville campus. DYS's chief of security, James Kent, directed the investigation. Among the directives given Kent regarding the investigation was a letter from general counsel for DYS, William Samford, dated May 17, 2001. Samford's letter to Kent states, in part:
"As you know, there have been allegations made recently of misconduct by staff at the Chalkville facility. I anticipate that litigation will certainly arise as a result thereof. Therefore, I here by [sic] request that you investigate these allegations and this alleged misconduct for me, and report to me as soon as you complete this investigation. This report is confidential."
Kent and other DYS investigators eventually took over 100 statements from detainees and staff at the Chalkville campus (the statements are referred to herein collectively as "investigative reports").
The action underlying this petition is one of several that have arisen from the alleged incidents at the Chalkville campus. DYS is not a party to the action. The defendants are various present and former DYS employees, sued in their individual capacities. The plaintiffs were detainees at Chalkville during the time the incidents are alleged to have occurred. Most, if not all, of the defendants and plaintiffs were interviewed during Kent's investigation. The plaintiffs requested that the trial court compel production of the investigative reports from DYS.
In response to the plaintiffs' subpoena for production of the investigative reports, DYS sought a protective order from the trial court, asserting the attorney-client privilege and asserting further that the reports were attorney work-product. On October 8, 2002, Judge Edward Ramsey, who was then assigned to the case and who had reviewed the documents as to which production was sought in camera, issued a protective order finding that the investigative reports were work-product. Judge Ramsey, however, did require DYS to identify, by name and address, the persons from whom statements forming the basis of the investigative reports were taken. Judge Ramsey then recused himself from any further consideration of the case.[1] The case was reassigned to Judge Caryl P. Privett.
Over two years later, on January 7, 2005, DYS, in response to a second motion filed by the plaintiffs to compel production of the investigative reports, filed a second motion seeking a protective order. On January 25, 2005 Judge Privett issued an order granting the plaintiffs' motion to compel, denying DYS's motion for a protective order, and ordering production of the investigative reports. It is this order which DYS seeks to have set aside.

Standard of Review
It has long been the law of this State that trial courts are to be afforded wide discretion in discovery matters and that mandamus is the appropriate method by which to seek review of a court's exercise of that discretion. Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala.1989); Ex parte Georgia Cas. & Sur. Co., 531 So.2d 838 (Ala.1988). Discovery orders will be reviewed in certain limited circumstances, including those instances where a "privilege *808 is disregarded." Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810 (Ala.2003).

Analysis
The trial court's January 25, 2005, order stated, in part:
"1. The 2001 investigation by James Kent was conducted for multiple reasons, including whether to take disciplinary action against DYS employees. Such an investigation is within the scope of Kent's ordinary responsibilities.
"2. The 2001 investigation resulted in a number of witness statements given to Kent; and
"3. Kent's investigation results were utilized by DYS management officials to take personnel actions regarding one or more DYS employees.
"The investigative materials at issue contain statements which are analogous to the witness statements taken by district attorney investigators which have been determined not to be work product. Assured Investors Life Ins. Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978). . . ."
Judge Privett's January 25 order relied on Assured Investors Life Insurance Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978). However, four months before Judge Privett issued her order, this Court overruled Assured Investors.[2]
The plaintiffs argue that the investigative reports were prepared pursuant to DYS policy and in the normal course of DYS's business and that the reports were made in anticipation of possible disciplinary action against DYS employees. The plaintiffs argue that the investigative reports were not prepared solely in anticipation of litigation and, therefore, that they are not protected work-product.
Ex parte Norfolk Southern Ry., 897 So.2d 290 (Ala.2004), addressed the issue whether statements taken in the ordinary course of business, and therefore not solely in anticipated litigation, are protected work-product. We held that a recorded statement taken by a claims agent was work-product where "[t]he claims agent testified that . . . when a fatality or a serious injury occurs in a grade-crossing accident, there is likely to be litigation regarding the accident." Norfolk Southern Ry., 897 So.2d at 295.
The question as to whether the investigative reports are work-product when there are several motivating causes, other than anticipated litigation, for preparing them turns on whether it was reasonable for DYS to assume, in light of the circumstances, that litigation could be expected. The gravity and extent of the accusations made by the detainees at the Chalkville campus, as well as the Samford letter, fully support DYS's position that it anticipated litigation as a result of the alleged incidents, and that the anticipation of litigation was a significant factor in its decision to have the investigative reports prepared. In consideration of these factors, and guided by our holding in Norfolk Southern Ry., we find that when the investigative reports were prepared there was clearly a likelihood of litigation resulting from the alleged incidents and that, therefore, the trial court erred in failing to determine that the investigative reports were work-product prepared in anticipation of litigation.
*809 DYS urges that, as a nonparty, it has the same rights as does a party to object to the discovery of privileged materials.[3] Although DYS is not a party in this action, the record indicates that DYS is or has been a party in approximately six related civil actions arising from the alleged incidents at the Chalkville campus.
Rule 26(c), Ala. R. Civ. P., provides that nonparties subjected to discovery requests from parties in litigation are entitled to protection to prevent "annoyance, embarrassment, oppression, or undue burden or expense."[4] DYS filed a motion for a protective order pursuant to Rule 26(c), asserting that DYS had good cause for the protection requested. The fact that the investigative reports were in fact work-product and that DYS is a party in several related actions supported its demonstration of good cause.
The procedure by which parties, such as the plaintiffs, seeking discovery may overcome a claim of privilege is set forth in Rule 26(b)(3), which provides, in part:
"(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule [concerning expert witnesses], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney . . .) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
The party seeking discovery of attorney work-product or other privileged materials may obtain such discovery only upon showing "substantial need of the materials in the preparation of the party's case" and that "the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Upon such a showing, the court may order discovery despite the claim of privilege.
Because the trial court found that the materials DYS sought to protect were not privileged, it never conducted the analysis set forth by Rule 26(b)(3) to determine whether, under the relevant facts, the plaintiffs can show the justification outlined by Rule 26(b)(3) for overcoming DYS's assertion of the work-product privilege.[5]
*810 We grant the petition and issue the writ of mandamus. The trial court is ordered to set aside its order of January 25, 2005, compelling DYS to produce the investigative reports to the plaintiffs. We further order the trial court to conduct a hearing to allow the parties the opportunity to conduct the factual analysis outlined in Rule 26(b)(3) to determine whether the plaintiffs can establish a "substantial need of the materials in the preparation of [their] case" and whether they are unable without "undue hardship to obtain the substantial equivalent of the materials by other means."
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
NOTES
[1] The plaintiffs contend that, as a result of his recusal, Judge Ramsey's order was a nullity. Nonetheless, the witness list, including the names and addresses of the persons interviewed during Kent's investigation, was produced to the plaintiffs in accordance with that order.
[2] "Assured Investors Life Insurance Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978) . . . is an incorrect statement of the law, which this Court has sufficiently disregarded over the years so as to lead to the conclusion that it has been overruled sub silentio." Ex parte Norfolk Southern Ry., 897 So.2d 290, 293 (Ala.2004).
[3] The trial court did not specifically address this point in its order, although it did acknowledge DYS's status as a nonparty.
[4] "As recognized in Rule 26(b)(1), [Ala. R. Civ. P.], and in Rule 26(c), the right of discovery is not unlimited, and the trial court has the power to prevent its abuse by any party." Ex parte Rudder, 507 So.2d 411, 414 (Ala. 1987).
[5] Although DYS is not a party in the underlying action and therefore Rule 26(b)(3) does not explicitly apply, its basic principles should be applied in determining whether a protective order should be issued pursuant to Rule 26(c). "Fortunately the courts need not be confined by a literal reading of [Federal] Rule 26(b)(3), and can continue to arrive at sensible decisions on this narrow point. To the extent that Rule 26(b)(3), literally read, seems to give insufficient protection to [nonparties for] material prepared in connection with some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c)." Wright, Miller & Marcus, 8 Fed. Prac. & Proc. Civ.2d § 2024(2d ed. 1994). Rule 26, Fed.R.Civ.P., is identical to Rule 26, Ala. R. Civ. P.