Lakeview Townhomes Property Owners' Association ("Association") and Breland Homes, Inc. ("Breland"), a developer of Lakeview Subdivision, filed an action seeking injunctive relief and claiming damages against Gavin W. Hunter and Earle Malone. At trial, the Association and Breland dropped the claim for damages and sought only the injunctive relief, in the form of a permanent injunction prohibiting Hunter and Malone from using the parcel of land made the subject of the action as a roadway for access to Hunter and Malone's property. The trial court denied the injunctive relief and entered a judgment for Hunter and Malone. We affirm.
In June 1982, Lake Forest, Inc. ("Lake Forest"), conveyed to Breland Breland by warranty deed a parcel of property that Breland Breland developed as Lakeview Townhomes, Phase II. The description of the property conveyed in that warranty deed does not include the property that is the subject of the plaintiffs' action; the property described in the deed is north of the disputed land. The deed contains the following language:
 "PROVIDED, HOWEVER, that SELLER hereby excepts and reserves unto itself, its successors and assigns, the drainage and utility easement across the
 PROPERTY, together with all rights of ingress to and egress from said drainage and utility easement, as described on EXHIBITS 'B,' and 'C,' which are adopted and incorporated herein as [if] fully set out."
In April 1983, Breland Builders, Inc., and Purcell Company, Inc. ("Purcell"), recorded a plat of the property described in the deed. Purcell had no ownership interest in the land. The Association introduced parol evidence to indicate that Lake Forest and Purcell were owned and managed by some of the same people and that the person who was both the secretary and general counsel of both Lake Forest and Purcell signed the plat with the name "Purcell."
Unlike the deed, the plat included the disputed land, which is shown on the plat to be a 30-foot-wide drainage and utility easement and driveway. The easement and the driveway are shown to run in the same 30-foot-wide path, and the land described in the deed as Phase II lies immediately north of and adjacent to the easement and driveway. The plat indicates that the easement and driveway run east to west across the property and that the driveway ends in a cul-de-sac. According to the plat, the easement continues past the cul-de-sac to the west.
In June 1983, Purcell attempted to convey to Lakeview Townhomes, Phase II, a non-exclusive easement for ingress and egress across the easement property. Purcell, however, did not own the easement property, according to all the documents in the record.
Later in June 1983, Lake Forest conveyed to Breland Breland a parcel of property that Breland Breland developed as Lakeview Townhomes, Phase III. The Phase III property lies immediately south of and adjacent to the easement property. Lake Forest was the owner of the property conveyed.
In January 1984, Lake Forest conveyed to Hunter and Malone several parcels of property located immediately west of and adjacent to Lakeview Townhomes, Phases II and III. About three years later, in May 1987, Lake Forest conveyed to Hunter and *Page 1289 
Malone a "non-exclusive right, privilege and easement of ingress and egress" across the easement property. Lake Forest owned the property across which Hunter and Malone's easement was granted. The conveyance contains the following language:
 "The foregoing easement is a non-exclusive easement which is subject to an existing, concurrent drainage and utility easement in favor of the Utilities Board of the Town of Daphne, as successor to Lake Forest Utility Corporation; an easement for ingress and egress in favor of Breland Builders, Inc., a corporation, and Lakeview Townhomes, Phase II Property Owners Association, a non-profit corporation. . . ."
When Hunter and Malone used that easement, the Association and Breland filed this action. The Association argued at the hearing that its members had purchased property in reliance on the representation that the property was at the end of a dead end street and cul-de-sac, not aware that there might be an easement that would allow others to use the land to get to the others' property. At the close of the plaintiffs' case, the trial court explicitly denied the defendants' motions for "directed verdict," although the Association and Breland state otherwise. After the hearing, the trial court entered a judgment, which, in its entirety, states:
 "At the close of the plaintiffs' case, defendants made certain motions which were denied and defendants rested. On consideration of the evidence adduced at trial and the post-trial briefs of counsel for both sides, it is the opinion of the court that plaintiff[s] [have] failed to prove [their] case and judgment is hereby entered for defendants against all plaintiffs."
The plaintiffs and defendants disagree over what standard of review is applicable to the trial court's factfinding. As Hunter and Malone state, normally when a trial court enters a judgment in a case and does not make specific findings of fact, we must assume that the trial court found the facts necessary to support its judgment, unless the findings would be clearly erroneous and against the great weight of the evidence.Ritchey v. Dalgo, 514 So.2d 808, 814 (Ala. 1987); Popwell v.Greene, 465 So.2d 384, 387 (Ala. 1985). The Association and Breland note:
 "Where the evidence before the trial court is undisputed, however, the ore tenus rule is inapplicable and the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts."
Justice v. Arab Lumber Supply, Inc., 533 So.2d 538, 542
(Ala. 1988). They argue, accordingly, that we should consider the evidence de novo.
That argument will not withstand scrutiny, however, because it requires the parties to take the self-contradictory position that there was no disputed evidence when, at the same time, the evidence must have been disputed for them to introduce properly the parol evidence they introduced concerning the documentation involved in the case. The documents in the record tend to establish Hunter and Malone's right to use the easement for ingress and egress across the easement property. Considering the documents carefully, however, we hold that the trial court properly allowed the introduction of parol evidence. During the presentation of that evidence, however, several factual disputes arose. For example, there was a major factual dispute concerning whether Lake Forest intended to execute the plats that Purcell instead executed. When a trial court hears ore tenus testimony, its judgment based upon that testimony is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences therefrom, we find the judgment to be plainly and palpably wrong. Williams v. Nearen, 540 So.2d 1371 (Ala. 1989).
The Association and Breland raise numerous arguments of reversible error. Specifically, they argue that the recordation of the plat, which was approved by the Baldwin County Commission, created an irrevocable dedication of the land *Page 1290 
to the public as a drainage and utility easement; that the approval of the plat created a restrictive easement that cannot be used as a roadway; that the evidence indicated that Lake Forest's name instead of Purcell's name should have been on the plat; that the trial court's judgment, in effect, vacated a portion of the plat, but did not abide by the statute relating to vacating or amending plats in so doing; and that Lake Forest and Purcell merged and that merger validated the prior acts of Purcell in relation to Lake Forest. We have carefully reviewed the record and the applicable law. None of the trial court's holdings are clearly erroneous, and the judgment is not plainly and palpably wrong. The trial court did not commit reversible error. The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.