ROBERTSON, Presiding Judge.
On December 3, 1986, Carey Noye, Jr., signed an enrollment form in order to obtain health insurance through a payroll deduction plan at his place of employment. Several months later, Noye exhibited signs of distress and depression concerning the amount of money he was earning, his extensive work hours, and the amount of money deducted from his weekly paycheck. Noye threatened to kill himself on at least one occasion in the presence of his mother, Manny Noye. On July 25, 1987, Noye’s aunt called the police after Noye began screaming and yelling around the house and Mrs. Noye was unable to calm him down. The police transported Noye to the University of Alabama at Birmingham Medical Center (UAB), where he was admitted. Noye was a patient at UAB from July 25, 1987, to July 31, 1987. Upon Noye’s release from the hospital, his doctor diagnosed him with an explosive personality disorder.
Noye filed a claim for benefits with the claims department at IntraServ Systems, Inc. (IntraServ). IntraServ administers the claims department for Consultants & Administrators Insurance Company, Inc. (C & A). C & A is the administrator for the carrier of Noye’s health insurance policy, All American *940 Life Insurance Company, Inc. (All American). Noye’s claim was denied by IntraServ because the treatment at UAB was for explosive personality disorder, and C & A and All American asserted that coverage for that type of treatment was excluded under the mental or nervous disorder provision of Noye’s health insurance policy.
On August 28,1988, Noye filed a complaint against C & A and The Guardian Life Insurance Company of America, Inc. (Guardian), in which he claimed that C & A and Guardian acted in bad faith when they denied his claim for benefits. On February 10, 1989, Noye amended his complaint and substituted The College Life Insurance Company of America, Inc. (College Life) for Guardian. On May 12, 1989, Noye amended his complaint and substituted All American for College Life.
On June 6, 1989, C & A and All American made a motion to dismiss or in the alternative a motion for a more definite statement. Noye filed an amended complaint on August 1, 1990, in which he claimed that he purchased an insurance policy from C & A and All American; that agents of C & A and All American made misrepresentations to him concerning the scope of the coverage of the insurance he purchased; and that he relied on those misrepresentations when he purchased the insurance. Noye also claimed that C & A and All American owed him a fiduciary duty; that they breached that fiduciary duty when they acted in bad faith in failing and refusing to pay his claims; and that their representatives fraudulently and intentionally misrepresented the nature of the policy to him.
On August 12, 1991, C & A and All American filed a motion for summary judgment in which they asserted that the group health insurance policy purchased by Noye was an employee benefit plan; that this employee benefit plan was within the ambit of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and that Noye’s state law claims were thus preempted by ERISA. C & A and All American also claimed that there was no genuine issue of material fact concerning Noye’s allegations of fraud, breach of contract, and bad faith.
On August 21, 1991, Noye filed a response to the motion for summary judgment in which he asserted that his state law claims were not preempted by ERISA and that there was a genuine issue of material fact regarding his state law claims.
On August 30, 1991, Noye filed an amended complaint in which he claimed that the actions of C & A and All American violated § 27-12-6, Code 1975, or the “twisting” statute which prohibits misrepresentations or misleading incomplete comparisons about the terms, conditions, or benefits of a policy holder’s insurance coverage for the purpose of inducing the policy holder to exchange one policy for another. Noye also claimed that, even if his state law claims are preempted by ERISA, the actions of C & A and All American violated ERISA, and he is entitled to compensatory and punitive damages pursuant to ERISA.
On December 5, 1991, the trial court held that the motion for summary judgment was due to be granted in part and overruled in part. Specifically, the trial court overruled the motion for summary judgment with regard to the claim for benefits under the policy and granted the motion for summary judgment with regard to all other claims.
On December 20,1991, a nonjury ore tenus proceeding was conducted. On January 13, 1992, the trial court entered a judgment in favor of Noye for benefits under the policy in the amount of $3,237. Noye’s claim for attorney’s fees under ERISA was denied.
Noye’s postjudgment motion was overruled. Noye appeals. All American cross-appeals.
The dispositive issue Noye raises on appeal is whether the trial court erred by granting summary judgment as to all claims except for those based on benefits under the insurance policy and by ruling that ERISA preempts Noye’s state common law claims.
The sole issue Ml American raises on cross-appeal is whether the trial court erred in awarding Noye a judgment in the amount of the benefits under the insurance policy.
*941 i.
The law regarding summary judgment is well established. Rule 56, Aabama Rules of Civil Procedure, provides that summary judgment is proper when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, e.g., Amerine v. James Tyson Co., 578 So.2d 1327 (Ala.Civ.App.1990). The party moving for summary judgment has the burden of negating the existence of a material fact. Rule 56, A.R.Civ.P. This court must apply the same standard utilized by the trial court when reviewing a summary judgment. Amerine.
The trial court granted summary judgment in favor of C & A and Al American regarding Noye’s state law claims. In reviewing this judgment, we must initially determine if Noye’s health insurance meets the criteria set forth in the United States Department of Labor regulations.
The United States Department of Labor regulations provide that the term “employee welfare benefit plan”
“shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
“(1) [n]o contributions are made by an employer or employee organization;
“(2) participation [in] the program is completely voluntary for employees or members;
“(3) [t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues check-offs and to remit them to the insurer; and
“(4) [t]he employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues check-offs.”
29 C.F.R. § 2510.3-l(j). Group or group-type insurance plans that meet each of the aforementioned criteria are excluded from ERISA’s coverage. Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir.1991).
The record reflects that Noye was twenty-seven years old; that Noye attended a special high school for slow learners at the University of Aabama at Birmingham; that Noye never received a diploma from that school; that Noye can read a little bit; and that he obtained employment through this school at Jones Manufacturing Company (Jones). The record also reflects: that Noye worked at Jones for ten years as a machine operator; that Noye obtained a health insurance policy at Jones; that Mrs. Noye first learned of Noye’s purchase of health insurance after Noye brought home some cards from work; that Noye stated in his deposition that he paid part of the premium, and his employer paid part of the premium for his health insurance; that Mrs. Noye stated in her deposition that the premiums for Noye’s insurance were taken out of his pay-cheek weekly; and that Mrs. Noye also stated in her deposition that Jones did not contribute towards these premiums.
In this case, we must determine if the trial court erred in holding that the United States Department of Labor regulations did not exclude Noye’s health insurance policy from the application of ERISA and that Noye’s policy was an “employee welfare benefit plan,” and that there was no genuine issue of material fact in regard to those holdings.
The record indicates that Noye and Mrs. Noye presented conflicting testimony in their depositions regarding the first element of the United States Department of Labor’s regulation concerning whether Jones made contributions towards employees’ premiums. In addition, there was evidence that Jones collected premiums through payroll deductions and remitted them to its employees’ insurance companies; however, there is no record evidence from Jones or All American that Jones ever paid a portion of Noye’s weekly insurance premium. In light of these facts, we hold that the trial court erred in holding that there was no genuine issue as to any material fact regarding whether Noye’s in *942 surance policy was an “employee welfare benefit plan”; whether Noye’s insurance policy was within the ambit of ERISA; or whether C & A and All American were entitled to a judgment as a matter of law as to Noye’s state common law claims. Consequently, we must reverse and remand for a trial on the merits as to these claims.
II.
All American contends that the trial court erred in awarding Noye a judgment in the amount of his claim for benefits under the insurance policy.
When a trial court hears ore tenus evidence, a presumption of correctness attaches to its judgment, and we will not reverse it on appeal unless the judgment is palpably wrong or manifestly unjust. Lawler & Co. v. Hare, 587 So.2d 387 (Ala.Civ.App.1991). Further, when a trial court hears conflicting testimony, and then enters its findings of fact, those findings are presumed correct and will not be disturbed on appeal unless they are palpably wrong. Lawler.
Charles Thomas Ash, an employee in C & A’s claims department, testified at the ore tenus proceeding that, when diagnostic procedures are conducted on a policy holder, whether these procedures are covered by the health insurance policy depends on the diagnosis of the physician. Mr. Ash testified that the physician usually renders a diagnosis at the time of discharge. Mr. Ash also testified that some of the expenses incurred by Noye during his hospitalization were for diagnostic tests.
We previously noted that Noye signed an enrollment form for health insurance on December 3, 1986. Mrs. Noye testified at the ore tenus proceeding that Jones began deducting premiums from Noye’s paycheck the week after Noye signed the enrollment form for insurance.
The deposition of Sharon Elaine West, vice president of the underwriting department for C & A at the time Noye obtained health insurance and filed a claim for benefits, was introduced at the ore tenus proceeding. West stated that her department operated pursuant to an underwriting rule that an application or an enrollment form could not be 45 days older than the signature date. West stated that if an application or enrollment form was more than 45 days old, then coverage was automatically denied. West also stated that Noye’s health insurance policy was in full force and effect when he was hospitalized. However, West stated that she knew Noye qualified for coverage on March 1,1987, because that was the effective date of the policy, and, that if he had qualified earlier, he would have had an earlier effective date.
We note that the effective date stamped on the enrollment form was March 1, 1987. We also note that Noye’s insurance policy contained the following exclusion of coverage:
“No benefits will be payable for Expenses incurred:
“31. and iii no event, for expenses related to the following conditions for the first six months following the effective date of coverage:
“g) Mental and nervous conditions_”
Noye’s policy defined a mental disorder as “all psychoneurosis and personality disorders as defined in the Diagnostic and Statistical Manual of Disorder II, of the American Psychiatric Association including alcoholism and drug addiction.”
Again, we note that “when a trial court enters a judgment in a case and does not make specific findings of fact, we must assume that the trial court found the facts necessary to support its judgment, unless the findings would be clearly erroneous and against the great weight of the evidence.” Lakeview Townhomes v. Hunter, 567 So.2d 1287, 1289 (Ala.1990) (citations omitted).
In this case, we must assume that the trial court found that the actual effective date of the policy was prior to March 1, 1987, and, therefore, the treatment received by Noye was not within the scope of the mental or nervous disorder exclusion because it oc: curred six months after the policy’s effective date. Consequently, we hold that this finding was not clearly erroneous and against the *943 great weight of the evidence.' Accordingly, the trial court did not err in entering a judgment in favor of Noye for $3,237, and we affirm as to this issue.
The judgment of the trial court is due to be affirmed in part and reversed in part, and the case remanded for further proceedings,
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
THIGPEN and RUSSELL, JJ., concur.