789 So.2d 858 (2001)
Ex parte WARRIOR LIGHTHOUSE, INC., et al.
(In re Warrior Lighthouse, Inc., et al. v. Drummond Company, Inc., et al.)
1990958.
Supreme Court of Alabama.
January 12, 2001.
*859 J. Michael Rediker and Michael C. Skotnicki of Ritchie & Rediker, L.L.C., Birmingham; and Steven P. Gregory, Tuscaloosa, for petitioners.
William Anthony Davis III, Jeannie B. Walston, and Philip G. Piggott of Starnes & Atchison, L.L.P., Birmingham, for respondent Drummond Company, Inc.
Michael D. Freeman and Robert Khayat, Jr., of Balch & Bingham, Birmingham, for respondent Alabama Power Company.
LYONS, Justice.
Warrior Lighthouse, Inc. ("Warrior"), a plaintiff in an action pending in the Jefferson Circuit Court, Bessemer Division, petitions this Court for a writ of mandamus directing Judge Daniel C. King III to order Drummond Company, Inc. ("Drummond"), to produce the coal-sale contract between Drummond and Alabama Power Company concerning coal produced from Drummond's Shoal Creek mine. We grant the petition and issue the writ.
Warrior and the others joining its petition own or lease waterfront property on the Black Warrior River in Jefferson County. In 1997, Warrior and others sued Drummond, alleging negligence, recklessness, willfulness and/or wantonness; strict and absolute liability; trespass and trespass on the case; waste; and nuisance. All claims related to damage caused to the plaintiffs' property by Drummond's coal operations at its Shoal Creek mine. In its complaint, Warrior states that Drummond's coal-mining operations at the Shoal Creek mine do not use the traditional "room-and-pillar" method of mining coal, but instead, utilize the "longwall-mining" process, which allows for the recovery of a much greater percentage of the coal than do other methods. In the longwall-mining process, expansive areas of the underground mine are completely mined of coal, with no roof support left in place. The roof eventually collapses under the weight of the rock above it, in what is called a "planned subsidence." Warrior asserts that the seismic energy released when the roof of the mine eventually collapses is powerful enough to register as an earthquake on the Richter scale. Warrior claims that such seismic events originating at the Shoal Creek mine have damaged its property and reduced the value of its business as a marina. Warrior contends that Drummond knew of the seismic dangers associated with longwall mining and that Warrior would have suffered less damage, or perhaps no damage, if Drummond had used conventional underground-mining methods.
Warrior attempted through discovery to obtain a copy of a coal-sale contract between Alabama Power and Drummond. Warrior contends that the contract establishes a favorable, above-market price for coal produced from the Shoal Creek mine, a price that motivates Drummond to engage in longwall mining rather than to use mining methods that leave more coal in the ground. Drummond strenuously objected to producing this contract. Alabama Power was eventually permitted to intervene in a limited role to assert its interest in keeping the contents of the contract confidential.
Alabama Power argued that the contract contains sensitive pricing information and trade secrets, the disclosure of which it *860 said would disadvantage it in future negotiations with other fuel suppliers. The trial court ordered Drummond to produce the contract for an in camera review. The trial court determined the contract was not relevant and thus was nondiscoverable. Warrior then petitioned this Court for the writ of mandamus, asking us to direct the trial court to order production of the disputed contract to Warrior.
Warrior asked this Court to review the contract in camera, and we granted its motion. Alabama Power produced the contract to this Court under seal. After reviewing the contract, we ordered further briefing so that the parties could more fully explore the potential relevance of information contained within the contract and suggest to this Court some practicable alternatives to full disclosure of the terms of the contract. Included with our order was an appendix containing a selected paragraph from the contract. That paragraph reads:
"25.01 Confidential and Proprietary Information. The terms and conditions (including prices) set forth in this Agreement are considered by both Purchaser and Seller to be confidential and proprietary information and neither party shall disclose any such information to any third party without advance written consent of the other (which consent shall not be unreasonably withheld) except where such disclosure may be required by law or regulation or in connection with assertion of a claim or defense in judicial or administrative proceedings involving the parties hereto, in which event the party to make such disclosure shall advise the other in advance and cooperate to the extent practicable to minimize the disclosure of any such information."
(Emphasis added.)
After reviewing the contract and the briefs of the parties, we conclude that, at this stage of the proceedings, the information contained in the contract is relevant to Warrior's claim and thus should be produced to it. At this point, we are dealing only with the question of relevance, not the ultimate admissibility at trial of the terms of the contract.
"Discovery is not limited to matters competent as evidence at trial. `Relevant,' as that word is used in the discovery rules, means relating to the subject matter of the action and having a reasonable possibility that the information sought will lead to other evidence that will be admissible; to be relevant, information need not itself be competent as evidence at trial. Rule 26(b)(1), [Ala.]R.Civ.P., Plitt v. Griggs, 585 So.2d 1317 (Ala.1991)."
Ex parte Thomas, 628 So.2d 483, 485 (Ala. 1993).
Central to Warrior's theory of the case is Warrior's assertion that Drummond acted with intentional, wanton, or reckless disregard for the property rights of adjacent landowners. Warrior wishes to analyze and reconstruct the decision-making process that led Drummond to select the longwall-mining process rather than the room-and-pillar method. It is reasonable to presume that given access to the detailed contract between Drummond and Alabama Power, a contract that Drummond acknowledges provided for a higher-than-spot price for coal at the time of signing, Warrior might be able to discover the existence of, and the degree of, an economic motivation or calculus underlying the origin of Drummond's choice of mining methods. Under this theory, disclosure of key provisions of the contractsuch as price, term and quantitycreates a reasonable possibility that Warrior would discover admissible evidence. Without knowledge of the contents of the contract, *861 Warrior will be at an unfair disadvantage in pressing its claims and overcoming its burdens. This is not to conclude that the contract itself is admissible, or that any particular evidence discovered will be admissible. We hold only that the contract is relevant and thus subject to discovery.[1] We can only conclude that but for the confidentiality clause in the contract between Drummond and Alabama Power, production of the contract would be routine.
Any solution to this discovery impasse imposes burdens. This Court recognizes the significant interests of Drummond and Alabama Power in preventing disclosure of their contract to third parties. However, the burdens of additional disclosure should be borne by Drummond and Alabama Power, because the alternative of placing the burden on Warrior by requiring it to proceed without disclosure is unacceptable.
The confidentiality clause of the contract has limits of practicality written into it. The clause provides that any disclosure to a third party of information contained within the contract shall be preceded by obtaining the written consent of the other contracting party, and that "consent shall not be unreasonably withheld." This suggests that the parties acknowledged the potential disclosure of contract terms, especially under certain defined circumstances, such as when required by the nature of a judicial or administrative proceeding. The clause also anticipates the disclosure of contract terms to governmental regulatory and administrative agencies.
Drummond asserts that the clause never contemplated discovery in lawsuits by third parties and that it relates only to lawsuits by either of the contracting parties. The plain language of the clause suggests otherwise. If Drummond had sued Alabama Power in a matter in which the coal-sale contract was at issue, there would be no way to shield the terms without defeating Drummond's right to proceed. The result should not be different where the plaintiff is a stranger to the contract, the plaintiff alleges damage occurring from performance of the contract, and information contained in the contract is relevant to the circumstances surrounding its manner of performance.
Recognizing the sensitive status of the information contained in the contract, we set forth two options for the trial court to consider on remand. First, Drummond is entitled to insist on a confidentiality agreement limiting disclosure only to parties essential to the litigation. Alternatively, Drummond could be permitted to defer disclosure while discovery proceeds on all matters without disclosing the terms of the contract, and be allowed thereafter to contend, in light of a more developed record, that compelling justification exists to reexamine this Court's conclusion that, at this stage of the proceedings, the contract is relevant. Should Drummond meet this heavy burden, production of the contract would be inappropriate. If Drummond failed to make a showing of no relevance whatever, Warrior's fees and expenses incurred in any additional discovery after subsequent production of the agreement, *862 in whole or in part, would be borne by Drummond.
PETITION GRANTED; WRIT ISSUED.
HOOPER, C.J., and MADDOX, HOUSTON, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
SEE and BROWN, JJ., dissent.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur with the holdings that the contract is discoverable and that Drummond is entitled to a confidentiality agreement limiting disclosure to only parties essential to the litigation. I respectfully dissent from the failure to grant the successful petitioner Warrior any real relief at all. I respectfully submit that this Court should not suggest as an appropriate option that Drummond delay disclosure and relegate Warrior to other methods of discovery and then to still further efforts to obtain this very same contract from Drummond. If the contract is discoverable, as we are holding it is, then it is discoverable now.
SEE, Justice (dissenting).
I dissent from the issuance of the writ of mandamus.
The main opinion reasons that because "[t]he confidentiality clause of the contract has limits of practicality written into it," this "suggests that the parties acknowledged the potential disclosure of contract terms" and "anticipate[d] the disclosure of contract terms to governmental regulatory and administrative agencies." 789 So.2d at 861. The confidentiality provision states that the contract is to be kept confidential "except where such disclosure may be required by law ... or in connection with [the] assertion of a claim or defense in judicial or administrative proceedings involving the parties hereto." See 789 So.2d at 860. (Emphasis added.) The action before us, however, is not between the parties to the agreement, Drummond Company and Alabama Power Company. Both of them oppose discovery. Moreover, "[a]n appellate court may not decide whether it would, in the first instance, have permitted the prayed for discovery." Assured Investors Life Insurance Co. v. National Union Assocs., Inc., 362 So.2d 228, 232 (Ala.1978).
This Court can affirm a trial court's order on any valid legal ground. See Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). Trial courts have broad discretion on discovery matters; we may not reverse their discovery rulings absent a clear abuse of discretion. See Ex parte Thomas, 628 So.2d 483, 485 (Ala.1993). "Furthermore, it is unusual to find abuse of discretion in [discovery] matters." Assured Investors, 362 So.2d at 232.
"A petition for the writ of mandamus is the proper means for obtaining review of the question `whether a trial court has abused its discretion ... in resolving discovery matters, and in issuing discovery orders.'" Ex parte Water Works & Sewer Bd. of the City of Birmingham, 723 So.2d 41, 42 (Ala.1998)(quoting Ex parte Compass Bank, 686 So.2d 1135, 1137 (Ala. 1996)). "A writ of mandamus is an extraordinary remedy, and one petitioning for it must show: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte Ridgeview Health Care Ctr., Inc., 786 So.2d 1112, 1114 (Ala. 2000).
I do not believe Warrior has met its burden to show "a clear legal right" to *863 disclosure of the coal-sale contract between Drummond and Alabama Power. Rule 26(b)(1), Ala. R. Civ. P., allows "[p]arties [to] obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and which is "reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.) The word "`[p]rivileged,' as used in Rule 26(b)(1), [Ala.R.Civ.P., refers to] `"privileges" as that term is understood in the law of evidence.'" See Assured Investors, 362 So.2d at 232 (quoting United States v. Reynolds, 345 U.S. 1, 6, 73 S.Ct. 528, 97 L.Ed. 727 (1953)). Rule 507, Ala.R.Evid., provides that trade secrets are privileged. The main opinion recognizes that Drummond and Alabama Power argued to the trial court that "the contract contains sensitive pricing information and trade secrets, the disclosure of which ... would disadvantage it in future negotiations with other fuel suppliers." 789 So.2d at 859-60. When, as here, "a trial court enters a judgment in a case and does not make specific findings of fact, we must assume that the trial court found the facts necessary to support its judgment, unless the findings would be clearly erroneous and against the great weight of the evidence." Lakeview Townhomes v. Hunter, 567 So.2d 1287, 1289 (Ala.1990). The trial court here could reasonably have concluded that the contract was privileged because of its "sensitive pricing information and trade secrets." I do not believe the trial court's judgment is "clearly erroneous and against the great weight of the evidence." See Lakeview Townhomes, 567 So.2d at 1289. I, therefore, must respectfully dissent.
BROWN, J., concurs.
NOTES
[1] Justice See's dissent correctly acknowledges the wide discretion accorded to a trial court in discovery matters. However, that dissenting opinion fails to give due regard to the rarity of orders forbidding any disclosure of trade secrets or confidential information. See 8 Charles Alan Wright et al., Federal Practice and Procedure: Civil § 2043 (2d ed.1994), citing Federal Open Market Comm. v. Merrill, 443 U.S. 340, 362 n. 24, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). For example, even the formula for the soft drink Coca-Cola has been the subject of an order requiring disclosure. See Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288 (D.Del.1985).