35 So.2d 369

BIRMINGHAM ELECTRIC CO. v. WOODWARD.

6 Div. 486.

Court of Appeals of Alabama.
April 6, 1948.

Rehearing Denied May 11, 1948.

Huey, Welch & Stone, of Bessemer, for appellant.

Ross, Ross & Ross, of Bessemer, for appellee.

HARWOOD, Judge.

In the trial below the plaintiff, appellee here, gained a verdict and damages in the amount of $500.

On submission of defendant's motion for a new trial the court below ruled that such sum was excessive by the amount of $75, and required a remittitur of $75 as a condition to overruling the motion. Such remittitur being filed the court overruled said motion.

The original complaint contained two counts, one alleging simple negligence, and the other wanton. Pleading was in short by consent. Only the simple negligence count was submitted to the jury by the court.

Evidence submitted by the plaintiff tended to show that as she left one of the defendant's cars on the North Bessemer line by the rear, or middle door, the door fanned shut before she was out of the car, caught her right foot, and dragged her a short distance, resulting in the injuries complained of.

The defendant introduced the operators of the only three cars which ran by the stops on the day and during the time alleged by the plaintiff to have been the approximate time of her ride on one of the defendant's cars. All three operators denied that any accident of any sort had occurred during these runs.

This conflict in testimony of course created only a question of fact for the jury.

It is clearly to be inferred from the evidence that the plaintiff, if injured as she asserted, was injured while disembarking from one of the defendant's cars belonging to the 400 series.

The defendant's witnesses offered testimony to the effect the doors on the 400 series cars and the 500 series were safety type doors that fanned open and shut. A two inch rubber gasket ran down the outer edges of each door, and when these doors fanned shut and caught any object as large as a human wrist between the gaskets they would automatically fan back open.

Mr. R. N. Pounders, one of defendant's witnesses, testified that neither the 400 series nor the 500 series type cars could start while the rear door was open.

Mr. Thornton, another witness for the defendant, testified: "You operate the 576 to 596 and it will start with the front door open; but on the magnet type they won't start with the front door open."

In this connection it should be noted that Mr. King, a witness for the defendant, testified that cars of the 400 series are the cars regularly used on the North Bessemer line, and some of 500 series are used as relief cars, and he would say 501, through 505, 508, 511, 517, and 520 were the ones so operated on the North Bessemer line during July 1946, the month of this alleged accident; that 570 through 596 were put on the North Bessemer line in case of emergency, but the 500 series cars were regularly and ordinarily used on the South Bessemer line.

Again according to Mr. King the difference in the operation of the doors of the two respective series of cars in that "The North Bessemer works on magnets, and the South Bessemer works by air." On both types of cars the doors are supposed to be closed before the car starts.

In rebuttal the plaintiff introduced as a witness Mr. W. L. Baxley who testified that during the noon recess the day this case was being tried he accompanied plaintiff's attorney and observed defendant's car No. 596 in operation on the South Bessemer line. In connection with Mr. Baxley's testimony the record shows the following:

"Q. I will ask you to tell the jury whether or not that street car would start with those doors open?

"Mr. Stone: Don't answer that. We object to that, if your Honor please. It is an observation made months after the alleged accident complained of. It is not shown that it was even on the same line. It is not shown that it was the same type of car involved in the accident complained of. It is not shown that the car that they saw was equipped in the same manner as the cars were equipped several months ago at the time of this alleged accident. There is no evidence here that the South Bessemer car line were equipped or operated in the same manner as the North Bessemer car line.

"The Court: Overruled.

"Mr. Stone: We except.

"Mr. Ross: Read the question. (Question read.)

"A. Well, now, I don't know whether I could tell what it would do. I could tell you what it didn't do. The doors were closed after the cars started. I watched going down there and coming back, and they would open the doors. Of course, they let the passengers on and off, and then, of course, the cars usually started, and also, the doors would be closed, and the doors would close after the cars started. If that is what you want. That is the best I know how to tell that. I can't say what every car would do. You asked about this particular car. That is what this one done.

"Q. And that particular car was No. 596? A. 596.

"Q. I will ask you, Mr. Baxley, to state whether or not that street car would start forward with those doors wide open? A. Well, the best I could tell, why the car would start, and then, of course, it seemed

the door started to close too; but the car would be going, and the doors closing. That is about the best way I would know how to tell that, I believe."

◼ In our opinion no error can be attached to the court's action in overruling the objection to the above questions. The objection to the technical phrasing of the question was rendered harmless by the witness' answer. The North Bessemer and South Bessemer lines were operated by the same company. There was an apparent and substantial similarity in the operation of the doors on the cars on both lines so far as known to court at this stage of the evidence.

In rebuttal the defendant recalled Mr. King as a witness. He testified that the magnet type door on the 400 series is called a "fool proof" door, while the door on the 500 series is not so designated, the "fool proof" door having a magnet mechanism, the other an air mechanism. On the air mechanism door the mechanism will sometimes short out in wet weather and when shorted out the car will start with the center door open. It was not raining the day car No. 596 was observed by Mr. Baxley.

This witness further testified that a "jumper," which will enable the 500 series cars to start while the doors are open has occasionally been found on the South Bessemer line cars (500 series) but never on the North Bessemer line cars (400 series). A "jumper" can be put on one of the South Bessemer cars in a minute or two, whereas on the North Bessemer line cars it would be necessary to rewire the center doors and it would require a half hour to do the job for one familiar with such operation.

On redirect examination during his rebuttal testimony Mr. King testified as follows:

"Q. As I understand your testimony is that the 596 series would not operate without the doors being completely closed unless it was shorted out in wet weather or some operator had placed a jumper on it? A. That is right."

At the conclusion of Mr. King's testimony the defendant moved to exclude the testimony offered by Mr. Baxley on the following grounds:

"It is not shown it is the type of street car involved in the accident complained of; and it is not shown the car was in the same mechanical condition; on the contrary it is shown it was not in the same condition, or the same type of street car.

"The Court: Overruled.

"Mr. Stone: We except."

The evidence presented by the defendant was directed toward showing that the plaintiff *could not* have been injured as she alleges for the reason that the cars of its 400 series could not start if the doors were open. Defendant's witnesses stated that cars of the 500 series likewise could not be started with the doors open unless the mechanism was shorted out by rain, or by the installation of a "jumper." It was not raining the day car No. 596 was observed by the witness Baxley. The presumption should be that no "jumper" had been installed.

While there is some difference in the mechanical operation of the doors on the two types of cars there is a substantial similarity in their basic functioning, that is that neither the 400 series nor the 500 series can supposedly operate with the center doors open under normal conditions.

◼ Baxley's testimony tends to show that car 596 did so operate on the day of the trial, which was more than six months after the alleged accident of which plaintiff complains. Such a possibility is properly relevant in view of the evidence submitted by the defendant. Bedgeod v. T. R. Miller Mill Co., 202 Ala. 299, 80 So. 364; Jerome H. Sheip, Inc., v. Baer, 210 Ala. 231, 97 So. 698. The evidence being relevant it is our view that much must be left to the discretion of the trial judge in determining the admissibility of evidence of the type now being considered. Considerable weight must be accorded his conclusions that the requirement of substantial similarity has been met and that such dissimilarity as does exist, and the remoteness in time of the observation, are factors going to the weight of such evidence and not its competency. See Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877.

For the above reasons we are unwilling to say that the trial court erred to reversal

in its ruling denying plaintiff's motion to exclude the testimony of the witness Baxley.

In the trial below the plaintiff testified that at the time of the accident she was working for a Mrs. Saunders, or Sanders, in Jonesboro, at wages of $12 or $13 per week, and lunches.

In interrogatories propounded to her she had stated she did not know the name of her employer, but knew her only as "Miss," and that her wages were $8 to $12 per week and food.

She further testified on cross examination in the trial as to the address of her employer.

In its motion for a new trial the defendant, as one of the grounds of said motion, sets forth that since the trial it has discovered that no such person as Mrs. Saunders or Sanders lives in the vicinity of the address testified to by the plaintiff, but that a Mrs. Glascow does live in such vicinity and that the plaintiff had been working for Mrs. Glascow for only about two months prior to July 1946 and that she never earned more than $3.00 to $3.50 per week in such employment. Affidavit of Mrs. Glascow as to such facts was attached to and made a part of the motion.

The plaintiff filed with the court an affidavit countering and explaining this ground of the motion for a new trial. Thus we are called upon to review the trial judge's discretionary action in his ruling on this motion. Indulging the presumption which we must in favor of the court's decision in this matter we think we must necessarily conclude that there was no error in his action in the premises. In addition the newly discovered evidence thus presented was basically impeaching in character, and thus furnished no grounds for granting the motion. Fries v. Acme White Lead and Color Works, 201 Ala. 613, 79 So. 45.

Appellant's remaining assignments pertain to the court's refusal to give his requested written charges 5 and 6.

It is our opinion that these charges over emphasize a certain phase of the defendant's evidence, which was disputed by the plaintiff's evidence, are invasive of the province of the jury, and possess misleading tendencies. No error therefore resulted to appellant in their refusal.

It is our opinion that this cause is due to be affirmed and it is so ordered.

Affirmed.