[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1092 
Cooper Tire Rubber Company ("Cooper") petitions this Court for a writ of mandamus ordering the Marion Circuit Court to grant its motion for a protective order seeking to limit the discovery of evidentiary materials by the plaintiffs in the underlying action. The underlying action arises from a collision in 2004 between a van driven by Elio Lopez Velasquez and an automobile driven by Richard Alan Dillard. Dillard's passengers included his wife, Karen Cosby Dillard; their minor daughter, Sara Elizabeth Dillard; and Karen's mother, Jessie Lee Cosby. All the adults in both vehicles were killed and Sara was seriously injured. The plaintiffs, the personal representatives of the Dillards and Cosby, sued Cooper and Velasquez's personal representative and alleged, with respect to Cooper, that a tire manufactured by Cooper and mounted on Velasquez's van failed as the result of Cooper's defective design and manufacture and caused Velasquez to lose control of the van, resulting in the accident.
In the ensuing litigation, the plaintiffs sought discovery of various documents and materials relating to the design and manufacture of Cooper's tires, including information pertaining to accidents and injuries allegedly caused by defects in Cooper's tires. A significant part of the information the plaintiffs sought to discover was information that had been produced by Cooper in the context of other litigation involving its tires. Cooper objected to the discovery on numerous grounds and asserted generally that complying with the plaintiffs' discovery request would be unduly burdensome and expensive, would result in irrelevant and duplicative materials, and would, in at least some circumstances, violate Cooper's privileges relating to its attorneys' work product and its trade secrets. On October 12, 2005, the plaintiffs moved to compel discovery, and Cooper responded, opposing the motion to compel, on October 24. On November 14, 2005, *Page 1093 
the trial court granted the motion to compel and entered a detailed protective order that mandated confidentiality with respect to various discovered materials and required counsel to maintain and account for copies of all materials subject to the protective order.
Cooper continued to resist producing the discovery requested by the plaintiffs, and on January 5, 2006, the trial court advised the parties of its rulings on the motion to compel by telephone and requested the parties' counsel to draft a proposed order, but counsel could not reach an agreement. On January 23, 2006, the trial court conducted a telephone conference with all counsel and directed Cooper to produce certain items requested by the plaintiffs within 10 to 15 days. On January 27, 2006, Cooper filed a motion for a protective order with respect to the production ordered by the trial court in its January 23 telephone conference. On January 31, 2006, Cooper filed a petition for a writ of mandamus and a motion for an emergency stay of proceedings with this Court it withdrew those filings when the trial court entered an order on the same day relieving Cooper of any obligation to comply with the 10- to 15-day time limit for production of the requested materials and stating that it would address in a subsequent order the concerns raised by Cooper in its motion for a protective order. That order was issued on February 9, 2006, and the substance of that order is at issue in this petition. Cooper seeks a writ of mandamus limiting the scope of the trial court's February 9 order concerning the plaintiffs' requested discovery to the parameters set out in Cooper's January 27 motion for a protective order.
The trial court's thoughtful and thorough orders thus far in this case exemplify its dedication to performing the extensive legal work and to understanding the legal principles necessary for resolving the complex discovery issues posed by this case. In its February 9 order, the trial court described the discovery sought by the plaintiffs and resisted by Cooper as follows:
 "1. Documents requested by the Plaintiffs in various motions for production but not produced by Cooper.
 "A. Quality Assurance Documents including Adjustment Date. . . .
 "(Plaintiffs have agreed to limit this request for a period beginning in 1998 until the present date. Plaintiffs have agreed to limit this request to tires produced at Cooper's Tupelo Plant.)
 "B. Skim Stock Formula. . . .
 "(Plaintiffs have agreed to modify the scope of this request and accept any documents evidencing changes of antioxidants and antiozidants and other chemical changes relating to the durability of Cooper's steel-belted tires.)
 "C. Test Reports and Wire Coverage Reports. . . .
 "(Plaintiffs have agreed to accept documents generated by Cooper from 10 weeks before the subject tire was manufactured until 10 weeks after the date of manufacture. It is stipulated that the tire involved in the present case was manufactured during the 19th week of 2002.)
 "D. Adjustment Records specifically relating to tires with nylon overlays and wedges. . . .
 "E. Documents relating to blisters and air pockets that can contribute to tread separation. . . .
 "F. Tread Separation Information.
 . . .
 "(Plaintiffs have agreed to limit this request to the time period beginning at the first of 1997 and until the present. Cooper seeks to limit the information *Page 1094 
and documents produced in response to this request to one tire design, `GTS 2879,' and for the time period from July, 2000, through August, 2004.)
 "G. Information pertaining to other accidents, injuries or failures of steel-belted radial tires designed and/or manufactured by Cooper. . . . "
 (Plaintiffs have agreed to limit this request to documents and evidence of accidents, injuries and failures occurring from the beginning of 1997 until the present. Cooper seeks to limit the information and documents produced in response to this request to those relating to complaints and lawsuits concerning only `GTS 2879' model tires, filed only in Alabama and only during a five (5) year period.)
 "H. Claims and/or Incident Reports or written documents by whatever name called reporting or addressing a tread separation involving a Cooper steel-belted radial tire. . . . "
 (Plaintiffs have agreed to accept documents that fall in this category that relate to other incidents that may have occurred from the beginning of 1997 to the present. Cooper seeks to limit the response to this request to those relating to complaints and lawsuits concerning only `GTS 2879' model tires, filed only in Alabama and only during a five (5) year period.)
 "I. Product Change Notification.
 "The period of this request extends from a date five (5) years prior to the date of manufacture.
 "J. Documents relating to Cooper's efforts to reduce or eliminate tread separations in their steel-belted radial tires. . . .
 "(Plaintiffs have agreed to limit the scope of this request to documents relating to activities that occurred from the beginning of 1997 to the present. Cooper seeks to limit the information and documents produced in response to this request to those relating to its efforts relating only to `GTS 2879' model tires and only those dated from July, 2000 through August, 2004.)
 "K. Depositions of Cooper employees given in other steel-belted radial tires separation cases. . . .
 "(Plaintiffs have agreed to limit this request to depositions of Cooper's employees taken in the California consolidated cases. Cooper seeks to limit its production in response to this request to only the portions of those depositions that Cooper deems to be `non-confidential.')
 "2. Copies of documents and the indices of documents produced by Cooper in other cases involving the failures of steel-belted radial tires, including documents contained and maintained in repositories pertaining to such other cases.
 . . .
 "3. Documents designated by a Bates stamp numbering system employed by Cooper and produced in other, similar litigation but not yet produced in the present case. . . . "
In most instances the material requested is followed by the phrase "[p]laintiffs have agreed to limit" or a phrase of similar import, indicating that the discovery process leading to the order had already resulted in limitations on the plaintiffs' requests.
The trial court's February 9 order also summarizes Cooper's January 27 64-page motion for a protective order by noting that in its motion Cooper sought to limit the plaintiffs' requested discovery (1) to a particular geographic area, i.e., to claims and actions filed in Alabama, (2) to a particular time period, i.e., to five years immediately preceding for discovery of other *Page 1095 
claims and causes of action and to 49 months immediately preceding for discovery of tread-separation documents, and (3) to a certain design of steel-belted tires, i.e., the particular model of tire involved in the accident that gave rise to the plaintiffs' action.
Among the many evidentiary submissions presented to the trial court before the issuance of the February 9, 2006, order was the affidavit of Dennis Carlson, a forensic expert with experience in the area of tire design, manufacture, and failure. In pertinent part, Carlson stated in his affidavit:
 "5. I have acted as an expert witness for the Plaintiffs in a number of other cases involving tread separations of tires manufactured by Cooper Tire 
Rubber Company (`Cooper'). In fact, I estimate that I have analyzed over 100 tires manufactured by Cooper that involved tread separations similar to the one at issue in this case. The Cooper tire tread separations I have analyzed have not been limited to any specific green tire specification. Indeed, because tread separations are caused by a variety of design and manufacturing defects which are common to a large number of different tires, I would not expect them to be limited to a specific green tire specification.
 "6. Other cases involving tread separations of Cooper tires in which I have acted as an expert witness include Rhodes [v. Cooper Tire Rubber Co. (No. 02-1208, Hinds (Mississippi) Circuit Court)], . . . and Talalai [v. Cooper Tire Rubber Co., 360 N.J.Super. 547, 823 A.2d 888
(2001)]. In connection with my work on these cases I have reviewed thousands of pages of Cooper documents related to tread separation. These documents generally were produced pursuant to protective orders that required the return of the documents following settlement of the cases. The Rhodes case involved issues similar to Dillard. Documents produced in Rhodes would be highly relevant in the Dillard case. Both cases involved the same failure mode and common issues of design, manufacture, construction and quality control.
 "7. The documents set forth on Exhibit 2 hereto were all produced at one time by Cooper in other cases and reviewed by me. I am prohibited from protective orders insisted upon by Cooper to disclose the substance of those documents but I can confirm that the information contained within the documents listed on Exhibit 2 is relevant and important to a number of issues in this case and is critical to a full understanding of the defects in the tire involved in this case. Such information is also important as it provides critical historical and foundational information to permit an understanding of the sequence of events that gave rise to the unsafe conditions that exist within the subject tire. If Cooper will agree to release me from the terms of protective orders in the cases in which those documents were produced I can provide a more detailed explanation of the relevancy of the documents listed on Exhibit 2.
 "8. The defects I have found in the tire at issue in this case are similar to those I have found as a result of my forensic analysis of tread belt separation failure of other Cooper tires in more than 100 cases where I have served as an expert. The tires involved in those cases are not limited to tires of the same green tire specifications as the tire involved in this case. This is not surprising. For example, the belt skim stock is an important factor in determining the durability of a tire — the ability of a tire to perform without experiencing failure *Page 1096 
as a result of tread/belt separation. The same skim stock rubber will be used on many different Cooper tires with different specifications. In analyzing tread/belt separations on a given tire one should consider the performance through available adjustment data, property damage claims and lawsuits of tires manufactured with the same belt skim stock.
 "9. In an effort to improve efficiency, it is the goal of every tire company to standardize as many parts as possible within their plants. For instance, most tire plants will use exactly the same rubber compounds and extrusions in the sidewalls, bead fillers, chaffers, protectors and under-treads in many different sizes and types of tires. Also, most calendared parts, such as inner liners, tread belts and carcass plies will be made from the same material but cut to different widths. Typically, the tread belt skim stock, which is the single most important rubber compound for tread belt separations, is used in virtually all of a tire company's passenger tires. When a tire company develops or modifies a belt skim stock or some component having to do with tire endurance, they generally conduct their tests on one size and type of tire and then apply the changes across the board.
 "10. From my experience with Cooper I am also aware that many different Cooper tires are manufactured with the same belt construction design, the same method, machines, quality control (or lack thereof), testing and development used in the mixing, component manufacture, assembly and curing, the same types of curing press and mold, the same laboratory rheometry tests and storage and the same type of testing.
 "11. As a Cooper tire company employee pointed out in his deposition, tires are like a pair of blue jeans, they use the same material, construction technique and joining methods. They just have more material for adult sizes than for children sizes. . . .
 "12. I have personally observed Cooper tires of `different' specifications that have the same failure modes, manufacturing defects and/or design defect.
 "13. The distinction of having a `different' specification is largely an artificial distinction. Two otherwise similar tires that differ only in a bead wire have a different specification. Most Cooper tires have the same or similar skim stock rubber, the same or similar belt design and the same failure modes. Documents show that it is not unusual for Cooper to make wholesale changes to tires of widely different green tire specifications at one time.
 "14. Instead of attempting to distinguish tires based on same or similar `green tire specifications' a more logical and relevant distinction would be based on `tires having similar separation resistance.' To reiterate, most Cooper tires have the same materials, design and failure mode.
 "15. When there are, in fact, design and/or manufacturing differences between tire lines from the same manufacturer, documentation concerning the different lines can be highly relevant in a product liability case. For example, if a different tire line utilized wedges or belt edge strips and adjustment data and property damage[] claims for that line showed a marked decrease in tread separations, this would be compelling evidence of a better alternative design that is clearly technologically and economically feasible."
The trial court's legal analysis in its February 9 order begins with a discussion of the purpose of discovery in the context *Page 1097 
of a product-liability case in which a defendant like Cooper has control of information necessary to the plaintiffs case, so that the discovery process is the only means by which a plaintiff can obtain the facts necessary to present a case. The trial court noted in its order that the scope of discovery was generally left to the trial court's discretion and that "a broad interpretation of the discovery rules that assists parties in litigation to acquire the true facts pertaining to the issues in litigation is politically `conservative.' See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,350." The trial court also noted that discovery rules contemplate that each party is to fully and completely respond to discovery requests of relevant evidence[2] and place a heavy burden on the party resisting discovery. With respect to Cooper's arguments concerning its right to resist the discovery of what it claims are trade secrets, the trial court noted:
 "The Court finds, as Justice Lyons'[s] majority opinion did in Ex parte Warrior Lighthouse, Inc., 789 So.2d 858, 861 (Ala. 2001), that discovery orders forbidding any disclosure of purported trade secrets or confidential matters are a `rarity,' and that if the `trade-secret' information sought is relevant to the plaintiffs claim, it should be produced by the defendant. The Court also finds that the Alabama Trade Secrets Act, Ala. Code [1975,] Sections 8-27-1, et seq., provides remedies only and the Act does not create any evidentiary privileges that stand in the way of the discovery sought by the Plaintiffs in this case. Nor do the Alabama Rules of Evidence, Rule 507, bar discovery of a trade secret, if the nondisclosure of that trade secret would `work injustice.'
 "It is further noted that, in order for the Court to make a ruling concerning evidence to which a trade-secret objection is raised, the Court would have to read and consider each document in order to make a proper ruling."
The trial court then expressed the basis for its order:
 "It is unclear to the Court whether Cooper proposes for the geographical, Alabamaonly limitation of discovery to apply to Cooper's activities concerning design and manufacture, or to occurrences of similar incidents. If discovery were to be limited to the State of Alabama (as Cooper proposes), the Plaintiffs would be unable to obtain any documents pertaining to the design or manufacture of steel-belted radial tires that occurred in other states. The Court rejects any such limitation. Otherwise, the Plaintiffs would be deprived of a day in court in Alabama for an injurious incident that occurred in this State. Further, discovery of accidents, injuries and claims information from other states is certainly discoverable and could lead to the discovery of documents and other information relevant to notice, the defect itself, and recoverable damages.
 "Cooper also proposes that discovery should be limited to a five-year (or less) period of time with respect to certain documents and records. The Court's Order will incorporate a reference of the times covered. *Page 1098 
"Cooper's most urgent objection concerns the design of the tires that should be discoverable. Cooper urges the Court to limit discovery to the particular model number of the tire on Cooper's co-defendant's vehicle, `GTS 2879.' It appears that this proposed restriction would apply to documents pertaining to the design and manufacture of tires, as well as to facts pertaining to other, similar incidents. The Court rejects this proposal. Cooper's duty to produce information relates to documents concerning the same or a substantially similar defect. The scope of Cooper's duty to produce information in this design and manufacturing-defect case should be approximately the same as the scope that a corporate-employee expert would apply in trying to identify and correct a defect in the usual and ordinary course of his or her company's business. That expert would look at documents concerning the design and manufacturing of similar tires and he or she would look at information concerning the occurrence of other, similar incidents. Such an inquiry would not be limited to a particular model number. The occurrence of other, similar incidents is like a test report and is vitally important to a proper resolution of a principal issue in dispute. Bates v. Firestone Tire Rubber Co., Inc., 83 F.R.D. 535, 538
(D.S.C. 1979).
 "In a product liability action such as this, the primary evidence of a defect is the fact that other people exposed to the same defect suffered injury. The greater the number of such incidents, the greater the likelihood that the defect, in fact, exists rather than some anecdotal explanation germane to an isolated occurrence. The cost of obtaining information concerning a certain design may increase when products that incorporate that design cause injury to many people. Certainly a manufacturer of such a product cannot limit the scope of production by arguing that many people have been hurt by the same defect.
 "The Court notes that Cooper has produced documents requested by other plaintiffs in three other civil actions that were filed in other jurisdictions. Cooper's objection to producing the same or similar documents in this civil action is inconsistent with its objection that is based on the time and expense of responding to discovery in the present case. Cooper's interpretation of the ruling of the Court in one of these cases[1] is that the Cooper documents produced in Mississippi should never be produced in any other case. That interpretation would mean that the plaintiff in another state injured by the same or similar defect could never get the basic relevant information. If this Court or any other court accepted Cooper's position in this respect, the plaintiffs in subsequent cases involving similar products would be denied their days in court. The Court rejects that position.
"`[1]In re Cooper Tire Rubber Co., No. 2003-01427 (Miss. Oct. 9, 2003)."
Accordingly, the trial court ordered Cooper to comply with the plaintiffs' requests for discovery of the documents it had earlier indicated were discoverable, specifically holding that the time limitation for those documents, from five years before the manufacture of the tire in question to the present, was reasonable. The trial court also ordered Cooper to produce the indices that it had earlier produced in the cases ofTalalai v. Cooper Tire Rubber Co.,360 N.J.Super. 547, 823 A.2d 888 (2001), and the CaliforniaJudicial Council Coordination Proceedings (California Superior Court, Los Angeles, Proceeding No. 4292). The trial court also required Cooper to produce the documents requested by the *Page 1099 
plaintiffs that had been produced in the case of Rhodesv. Cooper Tire Rubber Co. (Hinds (Mississippi) Circuit Court, Civil Action No. 02-1208), and to permit the inspection of the documents in the repository created by Cooper relating to the Talalai case. The trial court further noted that any documents Cooper asserted were protected by the attorney-work-product doctrine were to be submitted to the trial court for an in camera inspection before being produced for discovery.
Finally, the trial court addressed the plaintiffs' additional discovery requests:
 "Counsel for Plaintiffs have requested production of other documents designated by Bates-stamp numbers but not yet produced in the instant case. In support of their requests, the Plaintiffs have filed a three-page listing of documents. Each page contains the word `unprotected.' With regard to those documents, Defendant Cooper argues that the Plaintiffs have made a `blind request for confidential documents by Bates numbers that were produced in other lawsuits, which would also be protected by one or more additional protective orders.' (Brief of Defendant Cooper at page 14). The Court is not persuaded by this argument. The fact that the documents designated by Bates numbers may be protected by one or more additional protective orders is irrelevant. Defendant Cooper's position in this regard is exactly what has led to the Plaintiffs' present Motion to Compel. The Court has also considered the affidavit of the Plaintiffs' expert, Dennis Carlson, in particular paragraph number 7, which reads as follows:
 "`The documents set forth on Exhibit 2 hereto were all produced at one time by Cooper in other cases and reviewed by me. I am prohibited from protective orders insisted upon by Cooper to disclose the substance of those documents but I can confirm that the information contained within the documents listed on Exhibit 2 is relevant and important to a number of issues in this case and is critical to a full understanding of the defects in the tire involved in this case. Such information is also important as it provides critical historical and foundational information to permit an understanding of the sequence of events that gave rise to the unsafe conditions that exist within the subject tire. If Cooper will agree to release me from the terms of protective orders in the cases in which those documents were produced I can provide a more detailed explanation of the relevancy of the documents listed on Exhibit 2.'
 "It is unfair to allow Defendant Cooper to utilize protective orders from other cases in an attempt to avoid producing relevant documents, or documents that may lead to the discovery of relevant evidence, in this case and at the same time prohibit the Plaintiffs' expert from discussing or disclosing the substance of the documents at issue."
The trial court then ordered Cooper to produce the documents designated by the Bates numbers as denoted by the plaintiffs for its in camera inspection, and the trial court made all material to be produced in its order subject to the requirements of confidentiality and protections against unauthorized disclosure of information set out in its November 14, 2005, protective order. In a subsequent order dated February 21, 2006, the trial court found, based on its incamera inspection of the indices in the other defective-tire cases against Cooper, that the indices prepared by Cooper's lawyers in the Talalai andRhodes cases were not protected from discovery by the attorney-work-product doctrine. In *Page 1100 
pertinent part, the trial court's February 21 order states:
 "In the present case, the Court's in camera
examination does not reveal anything about the indices which Cooper has produced that even remotely indicates that the Plaintiffs could gain insight into Cooper's strategy or opinions. The Court's in camera
inspection further reveals (and Cooper's own arguments admit) that the indices Cooper compiled for use in Talalai and Rhodes relate to thousands of documents.
 "In their brief filed with their in camera
submission, Cooper asserts that the Rhodes
and Talalai indices contain the `mental impressions, conclusions, opinions, or legal theories' of their attorneys. Attached as Exhibit A is one page of the Rhodes indices which is an example of what the indices really contain. The vast majority of the Rhodes indices are merely exhibits and deposition transcripts and their correlation to subject matters such as lawsuits and consumer complaints with Bates-stamps and plaintiffs request numbers. The Court fails to find any legal theories, mental impressions, or conclusions of any attorney in the Rhodes indices, and, further finds that Cooper's position regarding the production of the Rhodes indices in this case to be completely without merit.
 "Likewise, the Court does not find that the indices Cooper compiled and produced for the Talalai
litigation are `opinion work product' that should be protected against discovery by the Plaintiffs in this case. Contained under Exhibit A to Cooper's in camera submission are four sets of indices of thousands of boxes of documents apparently stored in the Cleveland warehouse repository. The four indices are separated by documents from their Tupelo, Texarkana, Albany and Findlay plants. These indices may be a quick reference for the plaintiffs to determine what box in the warehouse to look for categories of documents such as `Consumer Complaints, Engineering, Testing, Quality Assurance . . .' but contain nothing that this Court could remotely construe to be opinion work product. The Talalai indices are an index to these thousands of boxes warehoused in Cleveland with one to six word descriptions of the documents contained therein. For example, Box 603 contains `Adjustment Reports'; Boxes 502 and 1302 contain `Consumer Complaints.' It is noted by the Court that one box according to the indices Cooper protests the production of, contains — `FILES.' Such nomenclature hardly amounts to protected work product."
A writ of mandamus can be issued to affect the trial court's control of the discovery process, but this Court's review of a petition seeking a writ in a discovery dispute is particularly stringent:
 "The law relating to the issuance of a writ of mandamus in a case involving a discovery dispute was recently set out in Ex parte Henry, 770 So.2d 76 (Ala. 2000). In Ex parte Henry, this Court stated:
 "`Rule 26 Ala. R. Civ. P., governs the discovery of information in civil actions. When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court. "Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala. 1992) (citations omitted); see also Ex parte Hicks, 727 So.2d 23, 33 (Ala. 1998) (Maddox, J., dissenting). *Page 1101 
"`. . . The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton, 711 So.2d 979, 983 (Ala. 1998) (citing Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991) (citing Martin v. Loeb Co., 349 So.2d 9 (Ala. 1977)). Moreover, this Court will not issue a writ of mandamus compelling a trial judge to alter a discovery order unless this Court "determines, based on all the facts that were before the trial court, that the trial court clearly abused its discretion." Ex parte Horton, 711 So.2d at 983. Moreover, "`[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,' and `[t]he writ will not issue where the right in question is doubtful'" Ex parte Bozeman, 420 So.2d 89, 91 (Ala. 1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala. 1981)).'"
Ex parte Pitts, 822 So.2d 418, 421-22 (Ala. 2001). See also Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810,813 (Ala. 2003) (holding that "mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions."). The Court in Ocwen noted that "[i]n certain exceptional cases . . . review by appeal of a discovery order may be inadequate" and that among those exceptional cases were those in which "a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party. . . ." 872 So.2d at 813. See also Ex parte Crawford Broad. Co., 904 So.2d 221
(Ala. 2004). Moreover, we are also aware of the fundamental disinclination of the appellate courts to intrude into the trial court's province of conducting the litigation process. Appellate courts are fundamentally directed toward the review of an appeal after a case is concluded in the trial court, and they are not well equipped to manage the trial court's business, particularly where the appellate case-load is more than sufficient to fully occupy the court's time. This Court has long recognized the principle that "`[c]ases should not be tried by piecemeal, and separate and distinct rulings upon the evidence brought to this court pending the progress of the trial. . . .'" Ex parte Alabama Power Co.,280 Ala. 586, 599, 196 So.2d 702, 715 (1967) (quoting Ex parteLittle, 205 Ala. 517, 517, 88 So. 645, 646 (1921)).
Cooper first asserts that it has no adequate remedy by appeal because enforcement of the trial court's February 9 order will immediately cause it to undertake unduly burdensome actions at excessive costs. We agree with this contention in the context of this case; if the discovery permitted by the trial court in this case is unduly broad, Cooper will have no remedy by appeal after it has complied with the discovery order. However, this Court must determine whether the trial court has exceeded its discretion under the circumstances of this case. *Page 1102 
Cooper's arguments that the instant discovery order is overly broad and unduly burdensome and thus exceeds the trial court's discretion are adequately summarized by the trial court, and those arguments are reasserted in the appeal; they are essentially that the discovery ordered by the trial court would require Cooper to produce millions of pages of documentation and expend millions of dollars in doing so. In support of its contention that the scope of the discovery ordered by the trial court is overly broad, Cooper cites numerous cases in which, it says, this Court held the ordered discovery to be overly broad:Ocwen, supra (discovery in case alleging fraud and conversion relating to how the defendant bank assessed mortgage payments); Ex parte Dillard Dep't Stores, Inc.,879 So.2d 1134 (Ala. 2003) (discovery arising out of claims of false imprisonment and assault); Ex parte Miltope Corp.,823 So.2d 640 (Ala. 2001) (discovery arising out of claims of fraud and breach of contract); Ex parte Wal-Mart Stores,Inc., 809 So.2d 818 (Ala. 2001) (discovery arising out of negligence and wantonness claims based upon merchandise falling from upper shelves); Ex parte Coosa Valley Health Care,Inc., 789 So.2d 208 (Ala. 2000) (discovery in action against a nursing home alleging failure to provide adequate care);Ex parte Henry, 770 So.2d 76 (Ala. 2000) (discovery in action against life insurer alleging conversion of premium payments); and Ex parte American Carpet Sales, Inc.,703 So.2d 950 (Ala. 1997) (discovery arising out of a claim of fraud in the sale and installation of carpet). Although the cases Cooper cites address situations in which the Court has recognized restrictions on discovery, none of those cases involve an action alleging a defective product.
A case cited by Cooper that is more closely on point is Exparte Weaver, 781 So.2d 944 (Ala. 2000). InWeaver, the plaintiff was injured while working with a table saw. He later filed a claim against the manufacturer of the saw, Delta International Machinery Corporation ("Delta"), alleging that the saw had been defectively designed and manufactured. In Weaver, the first trial of the plaintiffs claims ended in a mistrial; in the litigation leading up to the second trial, the plaintiff sought discovery of other injuries involving all table saws manufactured by Delta. The trial court limited the plaintiffs discovery to incidents involving the particular model of table saw by which he was injured and to incidents that had occurred on or before the date of the accident that resulted in the plaintiffs injury. The plaintiff subsequently petitioned this Court for a writ of mandamus directing the trial court to lift its restrictions on the scope of the plaintiffs discovery. After discussing the standards to be applied by this Court in issuing a writ of mandamus that would impact the trial court's discretion over discovery, the Court denied the petition. In pertinent part, the Court noted that the plaintiffs discovery request spanned a period of more than 40 years and addressed equipment that was significantly different than the table saw by which the plaintiff had been injured. Accordingly, the Court determined that in restricting the scope of the discovery sought by the plaintiff, the trial court had not exceeded its discretion. Cooper contends that, in light of the holding inWeaver, this Court must now hold that the trial court exceeded its discretion in refusing to limit the discovery sought by the plaintiffs to the constraints Cooper sought in its motion for a protective order.
There are factual differences between Weaver and the instant case concerning the nature of the product (inWeaver the complaint was directed toward the features of a specific model of table saw and the complaint in this case is directed toward a manufacturing process of numerous *Page 1103 
types of tire) and the scope of the time period for discovery in Weaver, the Court in Weaver
ultimately refused to hold that the trial court had exceeded its discretion by limiting discovery. Although Weaver
is factually distinct from this case, it does contain the statement that "limiting discovery was not only reasonable, but mandatory," under the circumstances of that case.781 So.2d at 949. Weaver, however, should not be read to hold that a trial court's discretion over the discovery process is limited to restricting discovery in every case.
In assessing whether the trial court here has exceeded its discretion, we consider whether the trial court's February 9 order is reasonably supported by the facts before it. With respect to Cooper's contentions that the discovery ordered on February 9 is irrelevant in that it included information on tires other than the specific model of tire involved in the accident, the trial court received evidence indicating that the "tread separation" defect alleged by the plaintiffs in this case was a factor in Cooper's design and manufacturing process in general rather than a feature of the "GTS 2879" tire. Specifically, the trial court heard expert testimony, based upon the expert's examination of numerous Cooper tires, that problems with tread separations were not limited to a particular model of tires manufactured by Cooper. That testimony also indicated that the manufacture of the tires was to a large extent standardized and that the particular design and manufacturing process was substantially the same, regardless of a particular model. Thus, the discovery in this case is directed toward detailing the instances in which Cooper's design and manufacturing process has resulted in tires that failed as a result of tread separation, regardless of the particular size or tread pattern of the tire.
We conclude that this information is relevant within the context of Rule 401, Ala. R.Evid., and Rule 26(b), Ala.R.Civ.P. Further, the discovery of this information comports with this Court's view of the relevance of such evidence in the context of a product-liability claim:
 "`On an issue of whether a place or thing was safe or dangerous at the time of the accident in question, evidence of the occurrence or non-occurrence of accidents to others at other times, in the use of such place or thing, is admissible if the condition of the place or thing at such other times was substantially the same as the condition existing at the time of the accident in suit.' (Footnote omitted [in Van Marter].)
 "C. Gamble, McElroy's Alabama Evidence
§ 83.01 (3rd ed. 1977); see also Southern Ry. Co. v. Lefan, 195 Ala. 295, 70 So. 249 (1915). Each ruling under this standard must be considered on a case-by-case basis. That being the case, admissibility of such evidence is within the trial court's discretion. Birmingham Electric Co. v. Woodward, 33 Ala. App. 526, 35 So.2d 369 (1948); accord State Farm Mutual Auto. Ins. Co. v. Griffin, 51 Ala.App. 426, 286 So.2d 302
(Ala.Civ.App. 1973); Blount County v. Hollingsworth, 45 Ala.App. 401, 231 So.2d 324
(Ala.Civ.App. 1970)."
General Motors Corp. v. Van Marter, 447 So.2d 1291,1293 (Ala. 1984). Thus, we cannot conclude that in permitting discovery of tread-separation issues in Cooper's tires at a national level for a period of 1997 through the date of manufacture of the tire on Velasquez's van the trial court exceeded its discretion on the basis that the material requested was not relevant.
However, we note that the documents sought by the plaintiffs as summarized in the trial court's February 9 order *Page 1104 
were related to the general failure of Cooper's tires, with no restriction on the manner or reason for that failure. When this case was argued before this Court on May 16, 2007, the plaintiffs indicated that the discovery of documents relating to any failure by a tire manufactured by Cooper was overly broad. We agree. Under the standard articulated inWeaver, supra, documentation concerning tire failures that occurred for reasons unrelated to tread separation are not properly included in the discovery of materials directed toward the plaintiffs' claims that Cooper's defective design and manufacture caused the tread separation that resulted in the accident here. The trial court should restrict the discovery sought by the plaintiffs to material related to the failure of Cooper tires as a result of tread separation. With reference to Carlson's affidavit, the plaintiffs' discovery might appropriately be limited to those Cooper tires manufactured from the same or substantially similar "skim stock" rubber using the same or similar manufacturing processes. Thus, the trial court properly held that Cooper's arguments that discovery should be limited to the particular model of tire on Velasquez's van, i.e., the GTS 2879, are without merit. However, the trial court exceeded it discretion in holding that the plaintiffs are entitled to discovery of information regarding the failures of all tires manufactured by Cooper, even those unrelated to tread separation, and the trial court is directed to limit its discovery order accordingly.
With respect to Cooper's contentions that the quantity of materials to be produced for discovery, even as limited above, is simply too vast to be managed without undue time and expense, we believe that the trial court's exercise of its discretion over the discovery process requires some reference to standards designed to address the technology of information that is available, or that can be made available, on electronic media. Although neither the courts of this state nor the legislature has developed standards for information available on electronic media, such standards have been addressed in the federal court system. For example, Federal Rule 26(b)(2)(B), Fed.R.Civ.P., addresses the scope of the discovery of electronically stored information ("ESI") as follows:
 "(B) Specific Limitations in Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."
In considering whether the discovery of ESI is unduly burdensome, the trial court may consider the application of computer search and retrieval programs that enable useful information to be obtained rapidly and effectively. In the context of electronic-information management, a litany of the amount of information to be disclosed by page or the amount of work to be expended if a person was to handle each such page individually is not a persuasive argument for showing that the trial court in this case exceeded its discretion. However, we recognize that Cooper has presented evidence in the form of an affidavit that its burden of production with respect to e-mails will entail thousands of hours and will cost hundreds of thousands of dollars. In light of this showing by *Page 1105 
Cooper, we believe that it is appropriate for the trial court to consider in more detail Cooper's arguments as to its cost of producing e-mails. In making its determination as to the proper extent of discovery of Cooper's relevant ESI, including e-mails, the trial court should consider the recent changes to the Federal Rules of Civil Procedure. See, e.g., R. Noel Clinard and William M. Ragland, A Practical Guide toE-Discovery Amendments to the Federal Rules of CivilProcedure (Eleventh Circuit Judicial Conference, May 2007). Of particular importance will be a consideration of the extent to which the ESI ordered produced is accessible under the new guidelines set out by the changes to Federal Rules of Civil Procedure 16, 26, 33, 34, 37, and 45 and Form 35. Also relevant, of course, will be the extent to which the material in question has already been produced.
An example of the analytical process employed by the federal courts in determining when ESI is properly subject to discovery is Wiginton v. CB Richard Ellis, Inc., 229 F.R.D. 568
(N.D.Ill. 2004). In Wiginton, the plaintiffs brought a class action against their employer alleging a nationwide practice of sexual harassment; they sought discovery of large quantities of ESI, including e-mails, in conjunction with their claims. The defendant employer asserted that the production of such information would be unduly burdensome and expensive. The court addressed the parties' arguments as follows:
 "The Court also begins this discussion with the general presumption in discovery that the responding party must bear the expense of complying with discovery requests. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, if the responding party asks the court for an order protecting it from `undue burden or expense,' the court may shift the costs to the non-producing party, rather than just disallowing the requested discovery. Fed.R.Civ.P. 26(c); Oppenheimer Fund, Inc., 437 U.S. at 358, 98 S.Ct. 2380; Rowe Entm't v. The William Morris Agency, Inc., 205 F.R.D. 421, 428 (S.D.N.Y. 2002); Fed.R.Civ.Pro. 34, Advisory Committee Notes, 1970 Amendment (`courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs').
 "B. Standards for Discovery of Electronic Data
 "Electronic data, such as e-mails, are discoverable. As contrasted with traditional paper discovery, e-discovery has the potential to be vastly more expensive due to the sheer volume of electronic information that can be easily and inexpensively stored on backup media. Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (`Zubu-lake /'); Byers v. III. State Police, No. 99 C 8105 . . . (N.D. Ill. June 3, 2002). Depending on how the electronic data is stored, it can be difficult, and hence expensive, to retrieve the data and search it for relevant documents. Theoretically, as technology improves, retrieving and searching data will become more standard and less costly. See e.g., Discovery By Keyword Search, 15 No. 3 Prac. Lit. 7 (2004).
 "In the meantime, until the technology advances and e-discovery becomes less expensive, cost will continue to be an issue as parties battle over who will foot the bill. In the electronic arena, three main tests have been suggested to determine when it is appropriate to shift the costs of searching and producing inaccessible data to the requesting party *Page 1106 
in order to protect the producing party from unduly burdensome e-discovery requests.[6]
 "First, under the marginal utility approach, the more likely it is that the search will discover critical information, the fairer it is to have the responding party search at its own expense. McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001). Next, the court in Rowe created eight factors for consideration in the cost-shifting analysis, one of which incorporated the marginal utility test.[7] 205 F.R.D. at 429. Finally, the court in Zubulake I modified the Rowe test to account for the fact that it interpreted the Rowe test as generally favoring cost-shifting, which had ignored the presumption that the responding party pays for discovery.[8] 217 F.R.D. at 320. We agree with both the Rowe court and the Zubulake court that the marginal utility test is the most important factor. Furthermore, while we are guided by the remainder of the Rowe and Zubulake factors, we find that the proportionality test set forth in Rule 26(b)(2)(iii)[, Fed.R.Civ.P.,] must shape the test. Thus, we modify the Zubulake rules by adding a factor that considers the importance of the requested discovery in resolving the issues of the litigation.
 "Therefore, we will consider the following factors: 1) the likelihood of discovering critical information; 2) the availability of such information from other sources; 3) the amount in controversy as compared to the total cost of production; 4) the parties' resources as compared to the total cost of production; 5) the relative ability of each party to control costs and its incentive to do so; 6) the importance of the issues at stake in the litigation; 7) the importance of the requested discovery in resolving the issues at stake in the litigation; and 8) the relative benefits to the parties of obtaining the information. At all times we keep in mind that because the presumption is that the responding party pays for discovery requests, the burden remains with CBRE to demonstrate that costs should be shifted to Plaintiffs. See Zubulake II, 216 F.R.D. at 283.
 "6 See cf. Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (`Zubulake II') (suggesting that cost-shifting is only appropriate when, as here, the data to be searched is inaccessible).
 " 7 The eight factors are: (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party. Rowe, 205 F.R.D. at 429.
 "8 The seven Zubulake factors are (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. 217 F.R.D. at 322. We agree with the court in Zubulake that the fourth Rowe factor (the purposes for which the responding *Page 1107 
party maintains the requested data) is not important."
229 F.R.D. at 571-73. We conclude that the consideration of factors analogous to those applied in Wiginton would be an appropriate exercise of the trial court's discretion in considering the extent to which Cooper should comply with the plaintiffs' discovery request for ESI.
Among the materials presented to the trial court by the plaintiffs were discovery orders from trial courts in other civil actions concerning claims against Cooper alleging defective design and manufacture of its tires and addressing Cooper's responses to requests for discovery in those actions.[3] A review of those orders indicates that the trial courts in those cases had considered and rejected Cooper's arguments that the requested discovery was unduly broad and burdensome, arguments substantially similar to the arguments Cooper made for refusing to comply with the plaintiffs' discovery requests in this case. These materials also support the trial court's conclusion that a large part of the materials sought by the plaintiffs in this case has already been produced by Cooper in earlier cases alleging defectively designed and manufactured tires. Specifically, the trial court required the production of materials, or the examination and copying of materials, already produced in the Rhodes andTalalai cases. In light of the fact that much of the material to be produced has already been compiled and submitted for discovery in other cases, we cannot conclude that the production of the same materials in this case is onerous. However, it is important that the trial court make a specific finding as to the relevance of the documents produced in those cases to the claims presented in this one. In Cooper Tire Rubber Co. v. McGill, 890 So.2d 859 (Miss. 2004), the Mississippi Supreme Court reviewed the imposition of punitive fines against Cooper for resisting discovery and held that such fines were permissible if certain procedural safeguards were observed. In the course of its holding, the court described the documents in Talalai as "hundreds of thousands of documents originating from a class action lawsuit involving every make of steel belted radial tire domestically produced by Cooper Tire over the past 15 years," 890 So.2d at 862, and housed in a repository in Cleveland, Ohio. Although possibly useful to the plaintiffs, it would appear that at least some of the Talalai documents might not be relevant to the claims in this case, which are based on tread separation related to a particular skim stock and manufacturing process. Accordingly, the trial court should limit Cooper's production of documents from those other cases to those documents that meet the same criteria for relevance as the documents to be produced by Cooper that are directly related to the claims presented here.[4]
We recognize that the trial court's findings with respect to Cooper's arguments that some of the indices prepared by Cooper's lawyers in other cases constituted *Page 1108 
their work product were based upon its in camera
examination of the documents. However, we must conclude that any determination that these indices were discoverable because they were not protected under the attorney-work-product doctrine was premature, in light of our instruction here that the trial court must first determine the extent to which any of the materials from these cases is sufficiently relevant to the circumstances in this case to warrant discovery. Only after the trial court has determined what portion of the information previously produced in the California Judicial CouncilCoordination Proceedings, Rhodes, and Talalai
cases is relevant would any consideration of the discovery of the indices prepared during the litigation of those cases be appropriate. This Court cannot anticipate the trial court's findings in regard to what portion of the material already produced in those other cases would be relevant for discovery in this case, and it cannot further speculate on whether the indices prepared in those cases might then be useful to any party with respect to the material available for discovery, even if the trial court determined that the portion of the indices that remained was not protected attorney work product. At the present posture of this case, the indices are included in those materials produced for discovery in CaliforniaJudicial Council Coordination Proceedings, Rhodes, andTalalai, and the extent to which they might be discoverable under the circumstances of this case rests on a determination that they are relevant for discovery in this case. A consideration of whether the indices would then be discoverable is not before us at this time.
With respect to Cooper's claims that some of the information ordered for production in the trial court's February 9 order is privileged "trade secret" information, we first note Cooper did not seek mandamus relief from the trial court's November 14, 2005, protective order. That order contains numerous constraints on the parties and their counsel requiring confidentiality, and it is broadly worded to prohibit the unauthorized dissemination of any information provided by Cooper in response to any discovery requests of the plaintiffs. That protective order further requires that the trial court review any documents before those documents could be released from the coverage of the November 14 protective order. As the trial court noted in its reference to Ex parte WarriorLighthouse, Inc., 789 So.2d 858 (Ala. 2001), it is a rare case in which a "trade secrets" argument is permitted to totally bar the right to discovery. See, e.g., 8 Charles Alan Wright et al., Federal Practice and Procedure: Civil
§ 2043 (2d ed. 1994), citing Federal Open Market Comm'nv. Merrill, 443 U.S. 340, 362 n. 24, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979), cited in Warrior Lighthouse,789 So.2d at 861 n. 1. This Court noted in WarriorLighthouse that one of the options available to the trial court in the discovery process was a confidentiality order limiting the parties' ability to access and disclose the sensitive information at issue. In this case, all the documents in question are already subject to a comprehensive protective order, and that order permits Cooper to challenge any attempt by the plaintiffs to disclose any discovered information.
We conclude that Cooper is entitled to an order prohibiting the discovery of any materials that do not relate to the failure of Cooper tires as a result of tread separation. To that extent, the writ is granted, and the trial court is instructed to eliminate such materials from its orders compelling production. The determination of relevance, i.e., whether the materials relate to the tire failure as a result of tread separation, should also apply to the production of materials already produced by *Page 1109 
Cooper in earlier cases, such as Talalai andRhodes, and to any indices to those materials. Further, the trial court should specifically address Cooper's arguments that compliance with the plaintiffs' request for the discovery of e-mails is unduly burdensome in light of the recent federal guidelines on that subject. The trial court should enter the appropriate protective order to the extent that it finds that the production of certain ESI is unduly burdensome. However, under the broad policy considerations in favor of the essential truth-finding purpose underlying discovery exemplified by Pitts and Ocwen, supra, we defer to the trial court's management of the discovery process as to all other aspects of its orders to compel production, and we conclude that in entering those orders the trial court did not exceed its discretion. Accordingly, in all other respects, Cooper's petition for a writ of mandamus is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
LYONS, WOODALL, SMITH, PARKER, and MURDOCK, JJ., concur.
SEE, STUART, and BOLIN, JJ., concur in the result.
[2] "Relevance" is defined broadly, as in Rule 401, Ala.R.Evid., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See also Rule 26(b)(1), Ala.R.Civ.P. ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").
[3] Rhodes, supra; Alfred Middleton v. CooperTire Rubber Company (South Carolina Court of Common Pleas, Hampton County, Case No. 99-CP-25-214); JohnnieMcGill v. Ford Motor Co. (Hinds (Mississippi) Circuit Court, No. 02-114); and Eric Smalls v. Ford Motor Co.
(South Carolina Court of Common Pleas, Hampton County, Case No. 01-CP-25-514).
[4] We are aware that Cooper's attempt to resist discovery of the documents it has already produced in other cases such aTalalai and Rhodes may work to its disadvantage in that Cooper could be required to sift among those many documents to produce only those documents relevant to the claims raised in this case. However, that appears to be the nature of the relief it seeks.